CASE 25—ACTION TO RECOVER DAMAGES FOR INJURY TO PROPERTY BY SURFACE WATER—OCT. 11.

# Stith v. L. & N. R. R. Co.

### APPEAL FROM HARDIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

RAILROADS—SURFACE WATER—FAILURE TO KEEP CULVERT OPEN.

Held:   Under Const. sec. 242, providing that "municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them," and also independent of the Constitution, a railroad company which, in constructing a fill, interrupts the natural drainage of surface water, or, after making a culvert through such a fill, fails to keep it open, so as to flood the premises of an upper proprietor, is guilty of an actionable wrong.

JUDGE BURNAM, DISSENTING.

J. D. IRWIN & W. A. BARRY, FOR APPELLANT.

There was only one question raised by the demurrer to the petition in this action, and that is whether the common law rule or the civil law rule prevails in Kentucky, as to the flow of surface water. The court below held that the common law rule prevails, and in this we think it was in error.

The decisions in Kentucky lean towards the civil law rule but the question has never been definitely decided by our court of last resort. Am. & Eng. Ency. of Law, Vols. 24, 907, & 917; 14 Bush 87, 4 Dana, 154.

W. H. MARRIOTT, ATTORNEY FOR APPELLEE.

H. W. BRUCE, OF COUNSEL.

### POINTS AND CITATIONS.

1. Under the common law rule the lower proprietor may improve his land, and for that purpose may raise the surface, and is not liable for damages caused by the consequent backing of surface water upon adjoining proprietor. Angell on Water Courses, secs. 108a, and 108b; Gould on Waters, sec. 267; Jones on Ease-

Stith v. L. & N. R. R. Co.

ments, sections 759 and 760; C. & V. R. R. Co. v. Stephens, 38 Am. Rep., 139; Barkley v. Wilcox, 40 Am. Rep., 519; O'Connor v. Fond Du Lac, A. & P. R. R. 38 Am. Rep., 753; Johnson v. C. & C. R. R. Co., 27 Am. State Rep., 79; Chadeayne v. Robinson, 3 Am. State Rep., 55; K. C. & E. R. R. Co. v. Riley, 20 Am. and Eng. Railroad cases, 116; (33 Kansas, 374); Rowe v. St. P. M. & M. R. R. Co., 16 Am. State Rep., 706; Egener v. N. Y. & R. B. Railway Co., 38 N. Y., 319; Town v. Mo. Pac. R. R. Co., 70 N. W. Rep., 402.

2. A railroad company has the same right to make embankments upon its right of way for the purpose of laying its track thereon as an owner of a town lot has to raise the surface of his lot for the purpose of erecting a house thereon.   Jones on Easements, sec. 773; M. & P. R. R. Co. v. Renfro, 39 Am. State Rep., 344; A. T. & S. F. R. R. Co. v. Hanner, 31 Am. Rep., 216.

3. The rule of the common law in regard to surface water prevails in England.   See Rawstron v. Taylor, 11 Exch., 369; Wood v. Wood, 3 Exch., 748; The Common law is in force in this State, Constitution of Kentucky, 1782, Sec. 6 Art. 8; Constitution of Kentucky, 1799, sec. 8, art. 6; Constitution of Kentucky, 1850, Sec. 8 Art. 8; Constitution of Kentucky, 1891, Sec. 233; Ray v. Sweeny, 14 Bush 9.

4. The common law rule as to the regulation or disposition of surface water has been adhered to by the courts of this State. Middlesborough Town Co. v. Helwig, 14 Ky. Law Rep., 430 (nor 30, 1892.)   Barring v. Commonwealth, 2 Duvall, 95

WALKER D. HINES, ATTORNEY FOR APPELLEE.

H. W. BRUCE, E. W. HINES & W. H. MARRIOTT, OF COUNSEL.

POINTS AND CITATIONS.

1. The common law rule applicable to surface water is eminently reasonable, while the rule of the civil law is inconsistent, unreasonable and unpractical. Abbott v. Railroad Company, 83 Mo., 271; Morrison v. Railroad Company, 67 Me., 353; Bowlsby v. Speer, 31 N. J. L., 351.

2. The weight of authority, as well as of reason, is on the side of the common law doctrine, and that doctrine has been adopted in the States of Connecticut, Indiana, Kansas, Maine, Massachusetts, Minnesota, Missouri, Nebraska, New Mexico, New Jersey, New York, South Carolina, Texas, Virginia, Washington and Wisconsin, and substantially in New Hampshire. Chadeayne v. Robinson, 55 Conn., 345; Cairo &c. R. Co. v. Stevens, 73 Ind., 278; 38 Am. Rep., 139; K. &c. R. Co. v. Riley, 33 Kan., 374; Morrison

v. R'd Co., 67 Maine, 353; Luther v. Winnisimmet Co., 9 Cush., 171; Gannon v. Hargadon, 10 Allen, 106; Rowe v. R'y Co., 41 Minn., 384; Jordan v. St. R. &c. R. Co., 42 Minn., 172; Abbott v. K. &c. R. Co., 83 Mo., 271; Town v. M. P. R. Co., 70 N. W., 402; Walker v. R'd Co., 165 U. S., 593; Bowlsby v. Speer, 31 N. J. L., 351; Barkley v. Wilcox, 86 N. Y., 140; Edwards v. C. C. & A. R. Co., 18 S. E., 58; Gross v. Lampasus, 74 Texas, 195; Swett v. Cutts, 50 N. H., 539; N. & W. R. Co. v. Carter, 22 S. E., 517; Cass v. Dicks, 44 Pac. Rep., 113; O'Connor v. R'd Co., 52 Wis., 526; and has also been recognized in England, as shown in Mr. Marriott's brief.

3. The common law already prevails in this State, and for that reason, if for no other, the common law rule should be recognized. Abbot v. K &c. R. Co., 83 Mo., 271; Edwards v. C. C. & A. R. Co., 18 S. E., 58; N. & W. R. Co. v. Carter, 22 S. E. 517; Cass v. Dicks, 44 Pac., 113; Walker v. R'd. Co., 165 U. S., 593.

4. The common law rule has already been impliedly recognized by this court: Barring v. Commonwealth, 2 Duval, 95; And twice distinctly recognized by the superior court. Middlesborough Town Co. v. Helwig, 14 Ky. Law Rep., 430; L. & N. R. Co. v. Wilson, 14 Ky. Law Rep., 719..

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

It is averred in the petition that the plaintiff is the owner of two houses and lots in or near Elizabethtown, Hardin county, adjoining the right of way of the defendant (appellee here); that they each have 106 feet front; that the defendant has an embankment in front of his property on its right of way, upon which its tracks are laid, which obstructs the natural flow of water from his and adjoining property; that the defendant has a culvert through its embankment, but it has carelessly, negligently, and wrongfully permitted it to become filled with mud and debris, so that water which flows from his and other property can not pass through it where it naturally should escape, and has carelessly, negligently, and wrongfully permitted it to remain in that condition; and that by reason thereof the flow of water is diverted from its natural

course of escape, and is forced upon the plaintiff's property, near his dwelling house and stable, forming a pond,
at times obstructing his free passage to and from his
stable and dwelling, and at times becomes polluted, thus
causing him great damage.   Counsel earnestly discuss the
question as to whether the rule of the civil or common
law prevails in Kentucky with reference to surface water.
The position of the appellee here is that the common-law
rule prevails, insisting that under it the lower proprietor
may improve his land, and may for that purpose raise
the surface, and is not liable for damages caused by the
consequent backing of surface water upon the adjoining
proprietor; that this doctrine applies to a railroad; that
it has the same right to make embankments upon its
right of way for the purpose of laying its track thereon
as the owner of a town lot has to raise the surface of his
lot for the purpose of erecting a house thereon.   So far as
we are aware, this court has not in express terms said
which rule prevails.   A municipality can, under the right
of eminent domain, condemn or acquire property for public
streets and construct them under a charter and an ordinance.   In Kemper v. City of Louisville, 14 Bush, 89, the
street was laid off and constructed in accordance with
the ordinance passed by the general council of the city of
Louisville.   On a certain lot water accumulated in such
quantities as to create a small pond, and in a short time
it was drained by a depression in the surface.   To avoid
such temporary inconveniences caused by the collection of
the water, the owner elevated the lot above the natural
surface, and was in the undisturbed use and enjoyment of
the property at the time the street was constructed.   In
making that improvement a fill was thrown across the
natural drain, without sewer or culvert, so as to obstruct

the passage of the water; the result being that much of the lot was permanently covered with water, and the dwelling rendered almost uninhabitable. The city defended the action upon the ground that it had the right to construct the street and change the grade when it deemed it expedient, or the public good required it, and the owner of the lot was compelled to submit to such incidental damage resulting therefrom. The court ruled that the owner of the lot was entitled to recover upon the grounds that it was an invasion of his private rights, and was the taking of his private property for public uses, and it could not be done without compensation. The court made the case turn upon a constitutional right of the citizen. In this case the appellee had the right to acquire by purchase, gift, or condemnation the right of way at the place where the injury isclaimed to have occurred. It had the same right to acquire the property and construct its right of way that a municipal corporation has to acquire land and construct a street. Each is done upon the ground that public necessity requires it. Before the present Constitution was adopted, this court, in Kemper v. City of Louisville, adjudged that, where the city constructed a street so as to close up the natural drainage of surface water, an action for damages could be maintained by the injured party. If a municipality, an arm of the State government, could not construct a street, and stop the flow of surface water through its natural outlet, without becoming liable to the owner of a lot upon which the water was backed thereby, certainly a railroad corporation can not construct its road so as to produce the same kind of injury, and not be liable. Each, under the right of eminent domain, is authorized to take private property for public uses by making suitable compensation. The rule followed in the Kemper

Case is the same as that of the civil law, although the court does not give the rule of the civil law as a reason for so adjudging, but the Constitution of the State. If there was a question in Kentucky before the adoption of the present Constitution as to whether the civil or common law rule prevailed with reference to the disposition of surface water, it is no longer an open one. Section 242 of the present Constitution reads as follows: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. . . ." Independent of the Constitution, under the authority of the Kemper Case, if a railroad company constructs a fill, and in doing so interrupts the natural drainage of surface water, and in consequence of which it caused the surface water to flow over the land of the upper proprietor, it is guilty of an actionable wrong. Under the section of the Constitution quoted, it is perfectly clear that one whose lands are damaged, though not actually taken by a railroad corporation, can maintain an action for the injury. From the averments of the petition the appellee recognized that it was necessary that the surface water should pass along its natural outlet, and, to facilitate it, constructed a culvert. It permitted it to fill up so as not to carry the water off which accumulated at or near its mouth. If it was its duty, as we believe it was, to permit the water to flow through its natural outlet, then it was responsible for letting the culvert become filled up so as to prevent its outflow. The effect is

exactly the same as if the fill had been made without any culvert. The judgment is reversed for proceedings consistent with this opinion.

DISSENTING OPINION OF THE COURT BY JUDGE BURNAM.

Appellant brought this suit to recover damages alleged to have been caused by the negligent failure of appellee to keep a culvert under its railroad track open, in consequence of which the surface water falling upon his land was dammed up and flowed back upon his property, thereby damaging his land and residence. A demurrer was sustained, and his petition dismissed. To reverse that ruling this appeal is prosecuted.

There is no averment that any natural drain, through which surface water falling upon his lot ran, was interfered with; recovery only being sought on the ground that the natural flow of surface water was interfered with. There is no constitutional or statutory provision in this State which authorizes the prosecution of this suit; and this right, if it exists, is derived from the common law, which is now, and always has been, in force in this State. See Const. Ky., 1792, art., 8, section 6; Const. Ky., 1799, art. 6, section 8; Const. Ky., 1850, art. 8, sec. 8; Const. Ky., 1891, section 233. The same provision is in all of them, and is as follows: "All laws which on the first day of June, 1792, were in force in the State of Virginia, and which are of a general nature, and not local to that State and not repugnant to this Constitution, nor to the laws which have been enacted by the General Assembly of this Commonwealth, shall be in force in this State until they shall be altered or repealed by the General Assembly." That the common law prevailed in Virginia on the 1st day of June, 1792, will not be disputed.

The question, then, to be determined is, what is the common law as to surface water?   In all of the text writers on this subject it is held that the right of the owner of land to occupy and improve it in such manner, and for such purposes, as he may see fit, can not be interfered with by any consideration of injury to other land, which may be occasioned by the flow of mere surface water in consequence of the lawful appropriation of land by its owner to a particular use or enjoyment.   Nor is it material, in the application of this principle of law, whether the party obstructs or changes the direction and flow of surface water by preventing it from going on his land by erecting embankments, or raising the level of his own land so as to throw it off into a new course after it has come within his boundary.   And this principle of law applies as well to a railroad company as to an individual.   No case squarely involving this question has been decided by this court, but the exact question was passed upon by the superior court in the cases of Town Co. v. Helwig, 14 Ky. Law Rep., 430, and Railroad Co. v. Wilson, Id., 719.   In Kemper v. City of Louisville, relied on in the opinion of the majority of the court, the suit was for obstructing a natural drain, and it is not authority in a proceeding of this character.   The position taken by the superior court in the cases decided by them is in accordance with the views of all the text writers to which our attention has been called, and also with the deliverances of the courts of last resort in the majority of the States in the Union.   See 24 Am. & Eng., Enc., Law, p. 970, where the question is fully discussed and the authorities cited.   In Angell on Water Courses (sections 108, 108b) the author says: "The right of an owner of land to occupy and improve it in such manner as he may see fit, either by changing the surface

or by the erection of buildings or other structures thereon, is not restricted or modified by the fact that his land is so situated with reference to that of an adjoining owner that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by snows and rains falling on its surface or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on the adjacent lands, or pass into and over the same in greater quantities or in other direction than they were accustomed to flow. Where there is no water course by grant or prescription, and no stipulation exists between the coterminous proprietors concerning the mode in which their resepective parcels shall be occupied and improved, no right to regulate and control the surface drainage of water can be asserted by the owner of the lot over that of his neighbor. 'Cujus est solum, ejus est usque ad coelum,' is a general rule applicable to the use and enjoyment of real property; and the right of a party to the free and unfettered control of his own land, above, upon, and beneath the surface, can not be interfered with or constrained by any consideration of injury to others which may be occasioned by the flow of mere surface water in consequence of the lawful appropriation of land by its owner to a particular use or mode of enjoyment. Nor is it at all material, in the application of this principle of law, whether the party obstructs or changes the direction and flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers or changing the level of the soil, so as to turn it off in a new course after coming within his boundaries, and cause it to flow in a new direction on land of a coterminous proprietor, where it has not previously been accustomed to flow. The obstruction of surface wa-

ter, or the alteration in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does not act inconsistent with the due exercise of dominion of his own soil. A person may improve any portion of his land, although he may cause the surface water thereon, whencesoever it may come, to pass off in a different direction and in larger quantities than previously. If such an act causes damage to adjacent land, it is *damnum absque injuria*. It makes no difference in the application of this rule that the land is naturally wet and swampy. The coterminous proprietor may change the situation or surface of his land by raising or filling it to a higher grade, by the construction of dykes, the erection of structures, or by other improvements which cause water to accumulate from natural causes on adjacent land, and prevent it from passing off the surface. Such consequences are the necessary result of the lawful appropriation of land, whatever may be its nature, although they may cause loss and detriment to others." Mr. Gould, in his work on Waters (section 267), says: "A landowner may change the grade of its surface, and if, in the absence of grant, prescription, or mutual stipulation, mere surface water or natural drainage is displaced, obstructed, or caused to accumulate on adjoining land, or upon a street or highway, no right of action arises." In Jones on Easements (sections 759, 760) the author says: "Under the rule of common law, the owner of the upper estate may appropriate or withhold, and the owner of the lower estate may repel, surface water, or water superficially percolating on the surface of his estate. Under this rule, surface water is regarded as a common enemy, which every one may get rid of as

best he can.   The owner of the upper estate may withhold
such water, and prevent it from reaching the lower land.
Such water belongs absolutely to the owner of the land
on the surface of which it is found.   No doubt, all the
water falling from heaven, and shed upon the surface
of a hill, at the foot of which runs a brook, must, by the nat-
ural force of gravity, find its way to the bottom and so
into the brook; but this does not prevent the owner of
the land on which it falls from dealing as he may please
and appropriating it.   He can not, it is true, if the water
has arrived at, and is flowing in, some natural channel al-
ready formed.   But he has a perfect right to appropriate
it before it arrives at such channel.'   The owner of land
may prevent surface water accumulated elsewhere from
coming upon, or he may alter the natural course of
such water, although he may thereby make it flow upon
the adjoining land of another to its injury.   In section
773 the same author says:   "A railroad company may
erect a solid embankment, and stop the flow of surface
water, in those States in which an individual is allowed
to do the same thing.   A railroad company has the same
right as an individual to divert or obstruct the flow of
surface water.   No exception is shown to the general rule
by the fact that a culvert could have been placed in such
embankment sufficient to have afforded an outlet to all
such water, nor by the fact that a culvert was placed there-
in insufficient to afford such outlet."   Dillon, in his work
on Municipal Corporations, speaking of surface water,
says:   "This the law very largely regards (as Lord Tenter-
den phrases it) as a common enemy.   .   .   .   On the one
hand, the owner of the property may take such measures
as he deems expedient to keep the surface water off
from him, or turn it from his own premises onto the street;

and, on the other hand, the municipal authorities may ex-
ercise their power in respect to the gradation, improve-
ment, and repair of streets, without being liable for the
consequential damages caused by surface water to adja-
cent property." See section 798 and notes. To the same
effect are Ang. Water Courses, 108; Add. Torts, 105;
Cooley, Torts, 574; Hil. Torts, 584. In Railway Co. v. Ham-
mer, 22 Kan., 763, (31 Am. Rep., 216,) Judge Brewer says:
"The simple fact that the owner of one tract of land
raises an embankment upon it which prevents the surface
water falling and running upon the land of an adjacent
owner from running off said land, and causes it to accu-
mulate thereon, to its damage, gives the latter no cause
of action against the former; nor is the rule changed by
the fact that the owner is a railroad corporation, and its
embankment raised for the purpose of a railroad track,
nor by the fact that a culvert could have been made under
said embankment sufficient to have afforded an outlet
for all such surface water, nor by the fact that a cul-
vert was placed therein insufficient to afford an outlet."

In my opinion, section 242 of the Constitution has no
application to the facts of this case, and no good reason
exists why this ancient rule of the common law should be
abandoned, and the rule of civil law adopted, by judicial
construction, as every structure upon lower land neces-
sarily interferes with the flow of surface water. This is
especially true of railroads. In this State they consist of
a succession of cuts and embankments, and every embank-
ment necessarily interferes to some extent with the flow
of surface water. The placing of a culvert under an em-
bankment does not allow it to flow as it did, but, on the
contrary, concentrates it in one place, and discharges it
upon the lower ground through this artificial channel,

which is contrary both to the common and civil law. See Gould, Waters, section 271. It in fact forces railroads in all cases to substitute trestles for embankments in the construction of railroads, as there is no other way in which the water will flow in its accustomed manner. In my opinion, the rule of common law, as heretofore existing in this State, best promotes the interest of the public and individual, and the application of the rule laid down in the majority opinion would in many places, and in a large portion of the State, materially retard many useful and profitable improvements, and seriously interfere with the construction of new railroads. For these reasons, I feel constrained to dissent from the opinion of the majority of the court.