CASE 24.—ACTION BY S. C. PICKERILL AGAINST THE CITY
OF LOUISVILLE AND OTHERS FOR DAMAGES
FOR CAUSING THE OVERFLOW OF HIS PREM-
ISES BY SURFACE WATER.—March 22.

## Pickerill v. City of Louisville, &c.

Appeal from Jefferson Circuit Court; Common
Pleas Branch (Second Division).

THOMAS R. GORDON, Judge.

Judgment   for   defendants.   Plaintiff   appeals.
Reversed.

1. Appeal—Verdict—Conflicting Evidence.—A verdict based on
conflicting evidence will not be set aside on appeal as against
the weight of the evidence.
2. Torts—Parties—Joint Tort-Feasors.—Where two railroads
and defendant city were alleged to have jointly contributed
to detain surface water so as to flood plaintiff's land, they
were all joint tort-feasors and properly joined as defendants
in a suit for the damages sustained, as authorized by Civil
Code Practice, section 83.
3. Waters and Water Courses—Surface Water—Use of Property.
—The owner of a lower estate, subject to the servitude of
receiving the natural flow of surface water from plaintiff's
upper estate, is not entitled to fill up his lot in order to make
it fit for occupancy and the prosecution of business, if the

effect is to retard the flow of such water and to turn it back on the upper ground.

4. Same—Rights of Dominant Owner.—The owner of upper ground has no right to make excavations, barriers, or drains thereon by which the flow of surface water is diverted from its natural channel and a new channel made on the lower ground, nor can he collect in one channel waters usually flowing onto his neighbor's land by several channels and thereby increase the flow on the lower ground.

5. Same—Injuries from Surface Water—Liability of Corporations.—Const. sec. 242, providing that municipal and other corporations and individuals vested with the privilege of taking property for public use shall make just compensation for property "taken, injured or damaged by them," etc., does not relieve corporations not authorized to take property by eminent domain from liability for injuries to the owner of a dominant estate from the corporation's filling up its servient estate so as to throw back surface water naturally flowing thereon.

6. Same—Measure of Damages.—Where plaintiff's property was injured by defendant's turning back surface water naturally flowing therefrom onto their land, the measure of plaintiff's damages, if the injury complained of was permanent, was the depreciation in the market value of his property to be recovered in a single recovery; but if the injury was temporary and could be readily removed and the property repaired, then the measure of damages was the depreciation in the rental value of the property during the period sued for, if rented out, or, if occupied by the owner, the diminution in the value of the use of the property during the continuance of the nuisance, covered by the period for which the action was brought.

7. Same—Instructions.—Where in an action for obstruction of surface water it appeared that plaintiff resided on the property damaged, it was error to charge the jury to allow him for loss in "its rental value," but instead the court should have charged that he was entitled to recover compensation for the destruction of his fencing sued for, and for the diminution of the value of the use of his property.

W. O. BRADLEY Attorney for Appellant.

CLASSIFICATION   OF   QUESTIONS   AND   AUTHORITIES
CITED.

1.  The trespass complained of was the result of the joint
actions of the defendants, hence they may all be sued in one
action, and a joint or several verdict rendered.    (Sec. 83 Civil
Code; St. Joseph v. Walpert, 80 Ky., 86; Sec. 12 Ky. Statutes).

2.  Under the present and former Constitutions of Kentucky,
and decisions of the Court of Appeals of Kentucky, the Civil Law
is recognized, which prevents an adjoining proprietor from inter-
fering with the natural flow of surface water from the land of
one above him.    (Sec. 242 Present Constitution of Kentucky;
Sec. 12, Bill of Rights, First Constitution of Kentucky; Sec. 12,
Art. 10, Second Constitution of Kentucky; Sec. 14, Art. 13, Third
Constitution of Kentucky; City of Henderson v. McClain, 19 Ky.
Law Rep., 1450; Robinson v. Swope, 12 Bush, 21; Sec. 6, Art. 8,
First Constitution of Kentucky; Sec. 8, Art. 6, Second Constitution
of Kentucky; Sec. 8, Art. 8, Third Constitution of Kentucky;
L. & N. R. R. v. Wilson, 14 Ky. Law Rep., 719; Middlesboro
Town Co. v. Helwig, 14 Ky. Law Rep., 403; Hahn v. Thorn-
bury, 7 Bush, 403; Kemper v. City of Louisville, 14 Bush, 88;
Grinstead v. Sanders, 22 Ky. Law Rep., 52; Livezey v.
Schmidt, 96 Ky., 444; L. & N. R. R. v. Brinton, 109 Ky., 182; Stith
v. L. & N. R. R., 109 Ky., 170-172-173; Robertson v. Daviess
Gravel R. C., 116 Ky., 914).

3.  The rule of the Civil Law mentioned has been adopted in
most of the States of the Union where the question has been
passed on.    (Am. & Eng. Ency. of Law (1 Ed.) Sub. Div. 7, p.
913; Ogburn v. Connor, 46 Cal., 346; Martin v. Jett, 12 Louisiana,
501; Denahoussaye v. Davis, 13 Louisiana, 587; Lattimore v.
Davis, 14 La., 161; Hooper v. Wilkinson, 15 La., 497; Laimer v.
Francis, 23 Mo., 181; Shaw v. Kansas City, 71 Mo., 237; Lord's
Exor. v. Carbon, Iron, etc., 38 N. J. Eq. (11 Stew) 452; Same
v. Same, 47 N. J. Eq., (15 Stew) 157; Martin v. Riddle, 26 Penn.
St., 411; Kauffman v. Griesemier, 26, Penn St., 411; Lucat v.
Rodgers, 159 Penn., 58; Boyd v. Conklin, 54 Mich., 583; Liedlin
v. Meyer, 95 Mich., 586; Sheldon v. Cole, (Com. P. L.) 3 Ohio
Dec., 473 to Ohio N. P.; Cin., Ham. & D. v. Rahr, 13
Ohio, Dec., 1035; Butler v. Peck, 16 Ohio St., 343; Crawford
v. Rambo, 14 Ohio, 279; Patneau v. Claire, 32 Ill. App.
554; Gormley v. Sanford, 52 Ill., 158; Gilman v. Madison, 49 Ill.,
487; Overton v. Sawyer, 1 Jones (N. C.) 308; Porter v. Durham,
74 (M. C.) 767; Philadelphia, etc. v. Davis, 86 Md., 281; Gulf,
Colo, etc. v. Pomeroy, 67 Tex., 498; Cornish v. Chicago, 49 Iowa.

387; Wharton v. Stevens, 84 Iowa, 107; Vannest v. Fleming, 79 Iowa, 638; see also Washburn on Easements, page 355.)

4. The true criterion of damages in this case, where the property has sustained direct injury is the difference between the market value of the property before the injury was sustained and its market value after the injury was sustained. (O'Malley v. City of Louisville, 21 Ky. Law Rep., 874; Bannon v. Romeiser, 17 Ky. Law Rep., 1379; Standard Oil Co. v. Kinnard, 13 Ky. Law Rep., 269; Same v. Same, 13 Ky. Law Rep., 270; L. & N. R. R. v. Hoge, 6 Bush, 141; Kemper v. City of Louisville, 14 Bush pp. 89-90-91-93-96; Pearson v. Zable, 78 Ky., 175; Hauns v. Central, K. L. A., 13 Ky. Law Rep., 566; Town of West Covington v. Shultz, 14 Ky. Law Rep., 832; L. & N. R. R. v. Finley, 86 Ky., 295-301; Stith v. L. & N. R. R., 109 Ky., 170-171-172; L. & N. R. R. v. Brinton, 109 Ky., 187; City of Mt. Sterling v. Jephson, 19 K. Law Rep., 1028; McArthur v. City of Dayton, 19 Ky. Law Rep., 883; City of Louisville v. Hegan, 20 Ky. Law Rep., 1532; (City of Louisville v. Bohlson, 22 Ky. Law Rep., 1864.)

5. The instructions of the court were erroneous because they require the jury to believe from the evidence that which was not denied by the pleadings.

6. Instructions 1, 2, 3 and 7 asked by the plaintiff should have been given. (Elliott's Roads and Streets, page 342; Pearson v. Zable, 78 Ky., 170; 2 Ky. Law Rep., 216; 6 Ky. Law Rep., 807-813; City Louisville v. O'Malley, 21 Ky. Law Rep., 873; City Louisville v. Bohlson, 22 Ky. Law Rep., 1864; City Louisville v. Norris, 23 Ky. Law Rep., 1195; Norman v. City Covington, 23 Ky. Law Rep., 118).

HELM, BRUCE & HELM for Appellee. L. & N. R. R. Co. B. D. WARFIELD of Counsel.

### POINTS AND AUTHORITIES.

1. The measure of damage for injury to property resulting from temporarily diverted surface water is the actual damage or injury to the property and any diminution in the rental value of the premises. (City of Louisville v. O'Malley, 21 Ky. Law Rep., 873; Bannon v. Murphy, 18 R., 989; Banion v. Rhomiser, 17 R., 1378; Bank of Hopkinsville v. Western Ky. Asylum for Insane, 21 R. 1820).

2. Appellant cannot complain that one element of damage was omitted from the instructions given by the court, when he himself offered no instruction embracing such element, though he offered

Pickerill v. City of Louisville, &c.

an instruction cn. the measure of damage. (First National Bank v. Germania S. V. & T. Co., 23 Ky. Law Rep., 2123; Union Central Life Insurance Co. v. Hughes, Admr., 22 Ky. Law Rep., 1549; Turner v. King, 89 Ky., 256; Smith v. LeForce 14 Ky. Law Rep., 399; Arncld v. Garth 10 Ky. Law Rep., 320; Turner v. Hogan, 3 Ky. Law Rep., 355; oBone v. Dyke, 3 Mon., 536; Cliff Stockton, 4 Litt., 215; L. N. A. & C. v. Davidson, 12 Ky. Law Rep., 142; L. & N. v. Bullens, 15 Ky. Law Rep., 752).

3. The jury being properly instructed upon the merits, appellant will not be heard to complain of the measure of damage that was submitted to the jury as the basis for recovery, when the jury by its verdict fcund for all the appellees, and did not find for appellants even such elements as were authorized by the instructions, it being obvious that no possible prejudice could have resulted to appellant. (Gallimore v. Brewer Bros., 22 Ky. Law Rep., 198; Tolbee v. Moore, 21 Ky. Law Rep., 380; Conley v. Adams, 19 Ky. Law Rep., 1084; Seibert's Asse. v. Ragsdale, 103 Ky., 210; Sayders Admr. v. L. & N. 22 Ky. Law Rep., 152; O'Bannon v. Goodrich, 23 Ky. Law Rep., 315).

4. The motion to elect should have been sustained as the three appellees were joined as joint tort-feasors when the acts complained cf against each occured at different times and in different places and were of different character, and appellees' acts were without a common intent or co-operation or plan or concert or agreement. Appellees not being joint trespassers or joirt tort-feasors cannot be sued in one action. (Bonte v. Postel, 109 Ky., 64; Ferguson v. Terry, 1 B. M., 96; Black's Law Dictionary; Amer. & Eng. Ency. cf Law, vol. 28, page 561; Sealey v. Alden, 61 Penn. St., 302; 100 Am. Dec., 642; Gould v. McKenna, 83 Pa. St., 203; Chipman v. Palmer, 77 N. Y., 52).

DODD & DODD for Appellee Bolt and Iron Co.

### POINTS AND AUTHORITIES.

1. The common law rule with respect to surface water prevails in this State. (Secs. 233 and 242 of present Constitution.)

2. The obstruction of surface water, or an alternation in the flow of it, affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil. (Middlesborough Town Co. v. Helwig, 14 Ky. Law Rep., 430; L. & N. R. R. Co. v. Wilson, 14 Ky. Law Rep., 719; Gannon v. Hagadon, 10 Allen, 106 (87 Am. Dec. 625), and numerous authori-

ties cited in the opinion; Barkley v. Wilcox, 86 N. Y., 143, and numerous authorities cited in the opinion; Norfolk & W. R. R. Co. v. Carter, 22 S. E., 517; Walker v. R. R. Co., 165 U. S., 602; Gibbs v. Williams, 25 Kans., 214; Farnham on Waters and Water Rights, vol. 3, sections 890 and 891; Gould on Waters, sec. 267; Wood on Nuisances, sec., 398; Boyd v. Conkling, 54 Mich., 583; Barring v. Commonwealth, 2 Duv., 95).

3. Where an instruction is given as to the measure of damage recoverable more favorable than that asked by complaining party, complaint thereof cannot be made for the first time upon appeal.

4. Instructions to a jury must be based upon, and be applicable, both to the pleadings and the evidence, and should neither be broader or narrower than the pleadings, but should be predicated on all the issues raised by the pleadings and supported by the evidence, and inasmuch as instruction numbered 6 given by the court was based upon the issues under the pleadings, regardless of the lack of evidence thereon, and was more favorable to appellant than he was entitled to, there cannot be complaint thereof in this court. (Bank of Commerce v. Haldeman, 22 Ky. Law Rep., 719; Encyclopedia of Pleading & Practice, vol. 11, page 158, and the authorities there cited).

5. The measure of damage for the creation of a nuisance on property by a third party, or parties, is the diminution in the rental value of the premises by reason of and occasioned by the nuisance so created thereon. (City of Louisville v. O'Malley, 21 Ky. Law Rep., 873; Bannon v. Murphey, 18 Ky. Law Rep., 981; Bannon v. Rohmeiser, 17 Ky. Law Rep., 1378; Standard Oil Co. v. Kinnard, 13 Ky. Law Rep., 277).

6. The nature of appellant's claim for damages is for the creation and maintenance of a nuisance, and recurrent in its character, and liability thereof is the diminution in the rental value of the premises occasioned by the nuisance. The cases of Kemper v. City, 14 Bush, 88, City v. Hegan and Bohlsen, and like cases relied upon by counsel for appellant were for permanent injuries and are not applicable to the facts of this case.

7. Appellant cannot complain of the court's failure by instruction numbered seven to present thereby or by any instruction a view of the law as to which he asked no instruction. (Louisville Ry. Co. v. Blum, Decided Oct. 20, 1905; Shanks v. Stewart, 16 Ky. Law Rep., 169; City of Henderson v. McGhee, 22 Ky. Law Rep., 605; C. & O. Ry. Co. v. Moats, 20 Ky. Law Rep., 1758).

OPINION OF THE COURT BY JUDGE SETTLE— Reversing.

The appellant, S. C. Pickerill, owns a house and lot on the east side of Jones street, in the city of Louisville. He complains that from March 12, 1903, to July 20, 1904, the lot in question was subjected to overflows from surface water which backed upon it in large and unusual quantities and to a depth of several feet, on account of which his coalhouse, stable, and privy upon the premises could not be reached or used by himself or family during much of the time during the year mentioned; that these inundations of the lot made his fence fall and decay, caused the vault of the privy to overflow, and its contents to be scattered over the premises, which, with the stagnant water and other excrement and filth brought thereon by the overflows, created bad odors, bred disease, and endangered the health of his family. For the above-enumerated injuries suit was brought by appellant in the court below against the appellee city of Louisville, the Louisville & Nashville Railroad Company, and the Louisville Belt & Iron Company. The petition set forth with great particularity the foregoing facts, charged that the overflows of appellant's lot and consequent injuries were caused by the joint and several negligence of the appellees, and that he had been damaged thereby in the sum of $500, for which he prayed judgment against them. It was also averred in the petition that when and before appellant's house and outbuildings were erected by him on the lot the drainage was good, and no inconvenience or damage was experienced by reason of the collection of water thereon; that at that time the Louisville & Nashville

Railroad Company had a ditch on its right of way,
running from K street southwestwardly to P street;
that there was a sewer from a point south of K street
to N street, and from Third street to N street, empty-
ing out near his property on N street between Jones
street and the property of the railroad company, its
exit at that point being accommodated by an open
ditch, which connected with the ditch on the right of
the railroad company, and by these ditches and
sewers the surface water upon appellant's lot and
adjacent territory was naturally and properly carried
away, and prevented from collecting on or flooding
his premises. That appellee Louisville Belt & Iron
Company wrongfully, unlawfully, and without appel-
lant's consent, made an excavation in Jones street,
north of N street, so as to carry the water from Jones
street halfway on the street to the end of the lots
fronting on the east side of Third street from M
street to N street, and toward the property of the rail-
road company, in an opposite direction from that in
which the water had theretofore run and been drained,
thereby greatly increasing the volume of water that
flowed to the right of way of the railroad company
at N street, the effect of which was to fill or stop
up the ditch of the railroad company, prevent the
escape of a large volume of water, and cause it to be
diverted from its usual course and flow back upon and
inundate appellant's premises. It was further
averred in the petition that after the excavation re-
ferred to, and before the building by the belt and iron
company of a roadway to its property, the appellee
railroad company constructed for the belt and iron
company two switches with side tracks from the
premises of that company to the railroad company's
tracks, one connecting with the railroad company's

track at a point north of N street, and the other connecting with its track between N and P streets; that, while these switches and side tracks were constructed at the cost of the belt and iron company, they are jointly used by it and the railroad company, and are kept in proper repair by the latter company; that culverts were made under the switches and side tracks when they were constructed by the railroad company, but they were and are too small to allow passage to the large volume of water that ought to go through them, and so negligently constructed that they soon became obstructed and closed, thereby causing the water to back upon, overflow, and stand on appellant's lot; that such backing of the water and overflow of appellant's lot was greatly aggravated and added to by the acts of the belt and iron company in dumping its slag and cinders on, around, and under the switches and tracks in question, and that these wrongful acts of both the railroad and the belt and iron companies were committed and done with the knowledge and approval of appellee city of Louisville. The petition contains the additional averment that the overflow of and injury to appellant's lot was contributed to and augmented by the acts of appellee city in so negligently constructing K, L, and O streets between Third and Fourth streets, and laying a small tile pipe through the curbing on the east side of Third street and connecting with the railroad ditch, as to divert the surface water from, where it was naturally accustomed to flow, and cause it to form a pond near his lot, from which, and the insufficient sewers, it backed upon and overflowed the lot; that the several obstructions wrongfully and negligently erected and maintained by appellees jointly and severally, and which caused the overflow of appel-

lant's lot, can readily be removed or remedied by
them, and culverts and drains provided for carrying
off the surface water and thereby preventing it from
backing on and overflowing his lot and causing injury
to his property, but that appellees and each of them
have failed and refused, and still refuse, to do any-
thing to remedy the evils complained of, and are all
equally guilty in continuing them.    Appellee Louis-
ville & Nashville Railroad Company, insisting that
the petition contained a misjoinder of parties and
actions, entered a motion to require appellant to elect,
and appellee belt and iron company filed a general
demurrer to the petition.    The motion and demurrer
were overruled.    Thereupon appellees, separately
answering, specifically denied  the  material allega-
tions of the petition.    Appellee belt and iron com-
pany, in addition, admitted that it "raised the
foundation and elevation of the ground upon which
its plant was constructed," but averred that it did
so "only to the extent necessary to enable it to make
use of said land, and construct said improvements in
such manner as to prevent the surface water from
passing in, upon, and over its lot as improved."  The
trial resulted in a verdict and judgment for the appel-
lees.   Appellant was refused a new trial, and by this
appeal  seeks  a  reversal  of  the  judgment  com-
plained of.

It is not our purpose to discuss in detail the evi-
dence heard by the jury, except to remark that there
was practically no conflict as to the flooding of appel-
lant's lot by surface water, or as to the nature and
extent of the injuries thereby caused the property.
But as to the further questions of whether the over-
flows were caused by the alleged negligent acts of
appellees complained of, and the extent to which each

contributed thereto, the testimony was very conflict-
ing, and much of it apparently irreconcilable.  That
of appellant strongly conduced to prove that the
overflow of and consequent injury to his property was
caused by the negligence of appellees and each of
them in the particulars alleged in the petition, and
that there was such privity and connection between
them and their acts of negligence contributing to the
injury of appellant's lot as to make them joint tort-
feasors, and therefore jointly as well as severally
liable in the action.  On the other hand, the testimony
of appellees' witnesses just as strongly conduced to
prove that the overflow and resulting injury to his
property complained of by appellant were not due
to the alleged acts of appellees, or any of them, but
to the fact that his lot and the adjacent lots and
streets, being near much standing water in ponds,
made them peculiarly liable to such overflows, and
that appellant's lot was subject to periodical over-
flows before any of the acts of appellees complained
of were done or committed, which was known or
ought to have been known to appellant when and
before he purchased the lot or erected the buildings
thereon; furthermore, that what was done by the city
of Louisville in opening and constructing the streets
and ditches and laying tiling contiguous to appel-
lant's lot was necessary to relieve the streets and
property situated on same of the surface water; that
this work was performed in the usual and a proper
manner, and without throwing any more water on
appellant's lot than had theretofore been accustomed
to flow thereon; also that the making of the fills,
switches, and side tracks by the Louisville & Nash-
ville Railroad Company and the belt and iron com-
pany were necessary for the proper conduct of their

business and to prevent their ground from being inundated by surface water.

We are of opinion that the court correctly refused to peremptorily instruct the jury to find for the appellees or any of them. The case was properly allowed to go to the jury upon the evidence, and, if the only question submitted for our decision were whether there was evidence to support the verdict, we should be forced to answer it in the affirmative, and such would have been our conclusion if the verdict had been for appellant instead of appellee, as there was also evidence upon which such a verdict might have been based. We cannot therefore disturb the verdict, unless it shall appear from the record that the lower court erred in some ruling which can be said to have prejudiced appellant's rights to such an extent as to have prevented him from having a fair trial.

The trial court properly overruled the motion of the appellee railroad company to elect. There was no misjoinder of parties or of actions. According to the allegations of the petition, and much of appellant's testimony, all the appellees were wrongdoers, as by their joint and several acts and conduct appellant's property was injured. If the averments of the petition are true, and appellant's testimony can be relied on, all contributed in some material measure to the injuries complained of. The injuries resulted from the diversion of the water from its natural course, and the accumulation of an unusual quantity of it upon appellant's lot. If this was caused in part by the act or acts of each of the appellees, and the entire volume of water produced by their joint and concurring negligence inflicted the injury, unquestionably it was inflicted by the combined or joint

action of all three of them; therefore they are jointly, as well as severally, liable. It would be impossible to segregate their acts of negligence, and state just what part of the injury was caused by each appellee. Manifestly, section 83 of the Civil Code of Practice allowed them to be sued in the one action, though they might have been sued separately, and a recovery had against them separately.

We are also of opinion that the lower court properly overruled the demurrer filed by appellee belt and iron company to the petition. It is the contention of that company, and such was the ground of the demurrer, that under the common law, which it is insisted is in force in this State, it had the right to fill its lot so as to render it fit for the occupancy of its plant and prosecution of its business, although in doing so it diverted the water from its natural course and caused it to flow in increased volume upon the lot of appellant, without becoming responsible in damages to him for such injury as may thereby have been caused his lot. If this was once recognized in this State as the common-law rule, it has been modified. In other words, this court has, in effect, though not in express terms, adopted in respect to such cases as this the rule of the civil law, which only subjects the lower estate to the easement or servitude of receiving the natural flow of surface water from the upper estate. That is to say, the doctrine seems to be that where two estates join, and one is lower than the other, the lower must necessarily be subject to the natural flow of surface water from the upper one. If this proves to be an inconvenience, it arises solely from the position of the lower estate, and in the nature of the case is unavoidable. Therefore the owner of the lower ground has no right to erect em-

bankments, or create other obstructions, whereby the natural flow of surface water from the upper ground is stopped or caused to back upon and overflow the upper ground. On the other hand, the owner of the upper ground has no right to make excavations, barriers, or drains upon his ground by which the flow of surface water is diverted from its natural channel and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbor's land by several channels, and thereby increase the flow upon the lower ground. Kemper v. City of Louisville, 14 Bush, 87; Hahn v. Thornberry, 7 Bush, 403. A case that seems to be directly in point is that of Grinstead v. Sanders, 56 S. W. 665, 22 Ky. Law Rep. 51. From the facts stated in the opinion, it appears that Grinstead and Sanders were owners of adjoining lands that were swampy, and for many years the surface water ran from Sanders' land onto Grinstead's, where it passed off through a large sink hole. Sanders cut two ditches through his land, by means of which a large surface of swampy land was drained onto Grinstead's land. To prevent this increased flow of water on his land, Grinstead erected thereon a dam which caused the water to back upon Sanders' land, and the latter sued to compel the removal of the dam. On these facts this court held that Grinstead's land, by reason of its location, was compelled to receive the surface water which flowed naturally from Sanders' land, and that he could not obstruct it by the erection of the dam, which he was ordered to remove, but that Sanders should be compelled to close up the ditches he had dug on his land, as they had increased the flow of water on the land of Grinstead. The case supra is directly in line with the doctrine of the civil

law.   The same is true of the case of Livezey v.
Schmidt, 96 Ky. 444, 16 Ky. Law Rep. 596, 29 S. W.
26, the action being one to recover damages for the
alleged pollution of the water.   In that case it is
said: "However injurious the natural flow of water
from the land of one upon another, there is no action
for injury, as a nuisance cannot exist in a legal sense
from the failure of one to change the flow of water
which springs from nature itself, and not from the
act of the owner."

It is contended by counsel for appellee belt and
iron company that only corporations or individuals
invested by section 242 of the State Constitution with
the privilege of taking private property for public
use can be made responsible in damages for injuries
such as are complained of in the case at bar, and
that, as the company in question is not invested with
such privilege, no recovery can be had against it in
this case.   The object of the constitutional provision
supra is to enlarge a similar provision of the previous
Constitution by allowing compensation for property
"injured or destroyed," as well as that taken for
public use, as was alone provided by the former
Constitution.   City of Henderson v. McClain, 43 S.
W. 700, 19 Ky. Law Rep. 1450.   The fact that in
Stith v. Louisville & Nashville Railroad Co., 109 Ky.
168, 22 Ky. Law Rep. 653, 58 S. W. 600, and Louis-
ville & Nashville Railroad Co. v. Brinton, 109 Ky.
190, 22 Ky. Law Rep. 664, 58 S. W. 604, it was held
that under this provision of the Constitution a rail-
road company could be made to respond in damages
for such injuries as are here complained of by appel-
lant, is not decisive of the right of other corporations
or individuals not enjoying the privilege of taking
private property for public use to escape liability

for such injuries. Although in the cases supra the plaintiffs sought and were allowed to recover damages of the railroad company for like injuries under and by virtue of the section of the Constitution supra, yet in the latter, Louisville & Nashville Railroad Company v. Brinton, it is said: "Our opinion is that under the rule of the civil and common law the appellant is liable for damages. However, if we were in error as to this, it would be immaterial, as it is clear that section 242 of the Constitution makes it liable. It is said in Gould, Waters, section 271: 'An owner of land has no right to rid his land of surface water, or superficially percolating water, by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor. This is alike the rule of the common and civil law."

It cannot be the meaning of the Constitution that private property can be taken, injured, or destroyed for private use. It does not require a constitutional provision to prevent the exercise of such arbitrary power over the property of another. Indeed, this court, in the case of Kemper v. City of Louisville, and Hahn v. Thornberry, supra, decided before the adoption of the present Constitution, allowed such a recovery as is here sought, and in the following cases, decided since the adoption of that instrument, such recovery was also allowed without question or discussion as to whether the right of action arose under section 242 of the state Constitution, or under the civil or common law. Thoman v. City of Covington, 62 S. W. 721, 23 Ky. Law Rep. 117; Louisville & Nashville Railroad Co. v. Cornelius, 64 S. W. 732, 23 Ky. Law Rep. 1069; City of Louisville v. Coleburne, 56 S. W. 681, 22 Ky. Law Rep. 67; Finley v. City of Williamsburg, 71 S. W. 502, 24 Ky. Law

Rep. 1336; City of Madisonville v. Hardman, 92 S. W. 930, 29 Ky. Law Rep. 253; Town of Central Covington v. Beiser, 122 Ky. 715, 92 S. W. 973, 29 Ky. Law Rep. 261. If, as announced by Gould, section 271, it is the rule of the common law, as well as the civil law, that "an owner of land has no right to rid his land of surface water * * * by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor," it is equally true that such owner cannot by making excavations or fills on his own land so obstruct the natural channels thereon as to discharge in unusual and hurtful quantities the surface water on the land of the adjoining proprietor. So, even at the common law, appellee belt and iron company would, it appears, be liable to appellant for the injuries inflicted by the over-flowing of his lot, if it caused or contributed to such injuries by the acts complained of.

A careful examination of the instructions given by the lower court for the guidance of the jury, convinces us that the only error appearing therein is to be found in instruction No. 7, which in attempting to define the measure of damages, told the jury, in substance, that if they found for appellant they should compensate him for any destruction of the fencing on the lot, and for any diminution in the rental value of the property between March 12, 1903, and July 20, 1904, not to exceed $500. The rule approved by this court as to the measure of damages in a case like the one at bar is that, where the injury or nuisance complained of is permanent, the measure of recovery is the depreciation in the market value of the property, and the one recovery must suffice. Central Consumers' Co. v. Pinkert, 122 Ky. 720, 92 S. W. 957, 29 Ky. Law Rep. 273. If, however, the injury to

the property is temporary in its character (that is, such as can be remedied by abating the nuisance, or removing the cause of the injury, and readily repairing the property), the measure of damages is the depreciation in the rental value of the property during the period sued for, if it be rented out, or if it is occupied by the owner, the damage to its use; that is, the diminution, if any, in the value of the use of the property during the continuance of the nuisance or injury covered by the period for which the action is brought. City of Madisonville v. Hardman, 92 S. W. 930, 29 Ky. Law Rep. 253; Hutchison v. City of Maysville, 100 S. W. 331, 30 Ky. Law Rep. 1173; Louisville & Nashville Railroad Co. v. Carter, 76 S. W. 364, 25 Ky. Law Rep. 759; Id., 77 S. W. 719, 25 Ky. Law Rep. 1303; Bannon v. Rohmeiser, 34 S. W. 1084, 35 S. W. 280, 17 Ky. Law Rep. 1379.

In the case at bar, appellant was residing on his property; therefore it was error to instruct the jury to award him damages for loss of its rental value. This error in the instruction was necessarily prejudicial to appellant, and might of itself have superinduced the verdict for appellees, for the jury may have concluded that, as appellant had lost no rents, he was not entitled to recover. They should have been told to compensate appellant, if he was entitled to anything, for the destruction of the fencing on the lot, and for the diminution of the value of the use of his property between the dates indicated in the instruction. On account of this error in the instructions, the judgment is reversed and cause remanded for a new trial, and further proceedings consistent with this opinion.

Petition for rehearing and extension of opinion overruled.