## Johnson, et al. v. Marcum, et al.

(Decided March 5, 1913.)

### Appeal from Breathitt Circuit Court.

1. Drainage—Obstruction of Natural Flow of Surface Water.—The owner of lower ground has no right to erect embankments, or create other obstructions, whereby the natural flow of surface water from the upper ground is stopped or caused to back upon and overflow the upperground, and the owner of a lower city lot is liable in damages when he so improves the same as to cause the water to back up and stand upon that of an adjacent owner.

2. Drainage—Obstruction of Natural Flow of Surface Water—Action for Damages to Property—Evidence.—In an action for damages to property resulting from overflow of surface water caused by an obstruction, evidence examined and held to authorize a judgment for $50.00.

A. H. PATTON for appellants.

KASH & KASH for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellants and appellee Marcum are the owners of adjoining lots in the town of Jackson. The lot of appellants is higher than that of appellee, Marcum, and the surface water naturally flows from appellants' lot over appellee's. The lots are each about 50 feet wide and 210 feet deep.

In 1909 appellee began the construction of a stone and cement wall along the line of her property next to appellants', and appellants instituted this action seeking to enjoin her from building the same, upon the ground that its construction would cause the surface water to be dammed up and stand upon their lot, and thereby injure it. After the injunction was denied, appellee completed the

construction of the wall from the front of her lot about 100 feet along the line between them, its height above the surface varying from 12 to 18 inches.

Appellants then filed an amended petition setting up the damage to their property and its use, and asked for a judgment in damages. The lower court dismissed their petition, and they appeal.

The evidence satisfactorily shows that the construction of the wall has obstructed the natural flow of the surface water and has caused it in time of heavy rains to stand on and back upon the lot of appellants so as to injure their garden, and cause a dampness in and around, and under their house, and otherwise injure the use of their property.

It is not contended that the water flowed from appellants' property on to that of appellee's, before the construction of the wall, through any particular channel, but in a diffused way along the line between them.

We gather from the briefs that the petition was dismissed upon the idea that an owner of city or town property may improve it in such way as to protect it from surface water flowing over it from adjacent property, without liability to the owner of such adjacent property for injury caused by the backing of the water upon it; and that seems to be the rule in a great many States. But in Kentucky a different rule has been adopted, and has been applied not only to farm lands, but to city property. In the case of Pickerill v. City of Louisville 125 Ky., 213, there was under consideration a case wherein a city lot was alleged to have been inundated by reason of the construction of certain ditches and embankments, and the court having under consideration the identical question which we have here, said:

"That is to say, the doctrine seems to be that where two estates join, and one is lower than the other, the lower must necessarily be subject to the natural flow of surface water from the upper one. If this proves to be an inconvenience, it arises solely from the position of the lower estate, and in the nature of the case is unavoidable. Therefore, the owner of the lower ground has no right to erect embankments, or create other obstructions, whereby the natural flow of surface water from the upper ground is stopped or caused to back upon and overflow the upper ground. On the other hand, the owner of the upper ground has no right to make excavations, barriers, or drains upon his ground by which the flow of surface

water is diverted from its natural channel and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbor's land by several channels, and thereby increase the flow upon the lower ground.''

And that case has since been followed and approved in the case of Madisonville H. & E. R. R. v. Cates, 138, Ky., 257. See also Livezey v. Schmidt, 96 Ky., 441; Robertson v. Daviess Gravel Road Co., 116 Ky., 913; Stith v. L. & N. R. R. Co., 109 Ky., 174; Cyc. Vol. 40, page 640.

But it is contended by appellee that this rule has been applied in Kentucky only in the case of corporations taking private property under the right of eminent domain under the provisions of section 242 of our Constitution; but the court in the Pickerill case aforesaid also considered that question and answered it in the following language:

''It cannot be the meaning of the Constitution that private property can be taken, injured, or destroyed for private use. It does not require a constitutional provision to prevent the exercise of such arbitrary power over the property of another. Indeed, this court, in the case of Kemper v. City of Louisville, and Hahn v. Thornberry, *supra*, decided before the adoption of the present constitution, allowed such a recovery as is here sought, and in the following cases, decided since the adoption of that instrument, such recovery was also allowed without question or discussion as to whether the right of action arose under section 242 of the State Constitution, or under the civil or common law.

''If, as announced by Gould, section 271, it is the rule of the common law, as well as the civil law, that 'an owner of land has no right to rid his land of surface water—by collecting it in artificial channels and discharging it through or upon the land of an adjoining proprietor,' it is equally true that such owner cannot, by making excavations or fills on his own land, so obstruct the natural channels thereon as to discharge in unusual and hurtful quantities the surface water on the land of the adjoining proprietor. So, even at the common law, appellee belt and iron company would, it appears, be liable to appellant for the injuries inflicted by the overflowing of his lot, if it caused or contributed to such injuries by the acts complained of.''

So we find the question settled in this jurisdiction as to the liability for damages of a holder of a lower city lot when he so improves the same as to cause the water to back up and stand upon that of an adjacent owner.

The only remaining question is, what were appellants damaged, if anything?

The evidence is satisfactory that the construction of the wall by appellee obstructed to some extent the natural passage of the water from appellants' property on to that of appellee's, and caused the same at times to be dammed up and stand upon the property of appellants; that it injured their garden and caused a large portion of it to be unproductive; that the water backed up under the dwelling house thereon, and caused the same to be damp, and perhaps in some other ways injured the property and interfered with the full enjoyment thereof.

On the other hand, it appears that appellants could have at a comparatively small cost drained the water from their premises out on to the street in front of their lot, where it would have naturally flowed into the river.

Upon consideration of the whole testimony, we are of the opinion that a judgment for appellants for fifty dollars in damages should have been rendered, and the judgment is reversed to the end that such a judgment may be entered.