v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky

Nov. 23, 1960.

W. Howell HOPSON, Appellant,

v.

Sam D. DOWNS et al., Appellees.

Court of Appeals of Kentucky.

Nov. 23, 1960.

Ben B. Wright, Cadiz, Holland G. Bryan, Paducah, for appellant.

Edward H. Johnstone, Princeton, Burton Aldridge, Cadiz, for appellees.

CLAY, Commissioner.

Appellant plaintiff brought this action for damages allegedly caused by defendant appellees in maintaining a levee or fill which obstructed the natural drainage and caused flooding of the plaintiff's premises. An injunction was also asked. The case was tried by a jury and it returned a verdict for the principal defendant. Plaintiff appeals.

Plaintiff owns farm land which lies south of U. S. Highway 68. Defendants Sam Downs and his wife own a substantial tract, with a lower elevation, on the north side of this highway. The natural surface drainage is northwestwardly across plaintiff's land, under a fill and bridge on Highway 68, into Ramsey Creek, and over the land of Downs.

In 1956 the Downses leased their land to defendant Cedar Bluff Stone Company for the operation of a rock quarry thereon. The Company constructed an access road which made necessary a fill, 12 feet high, across Ramsey Creek about 600 feet northwest of Highway 68. The Company installed under the fill several large drainpipes to accommodate the flow.

In November 1957 the area was subjected to an unprecedented rainfall (4.48 inches in 7 hours; 6.65 inches over a 24 hour period). Headwaters built up behind the Company's fill, behind an abandoned road fill lying between the access road and Highway 68, and behind Highway 68 itself. The waters backed up onto plaintiff's land, damaging a tenant house and other property.

It is plaintiff's contention that the Company's access road fill was the cause of this flooding. He proved that the drainpipes were wholly inadequate to carry off the rainfall which fell on this one day in November.

Defendants proved that the top of the access road fill was several feet lower in elevation than that of the abandoned road fill lying between it and Highway 68 and lower than the lowest point on Highway 68. They maintain that flooding waters would flow over the fill before reaching the top of Highway 68. Their theory was that the abandoned roadway fill and Highway 68 were the obstructions which caused the water to back up on plaintiff's property. They also rely on the defense of extraordinary rainfall.

There were two basic issues presented in this controversy. The first was whether or not defendants' fill actually caused the flooding of plaintiff's land. There was a conflict in the evidence on this question, and it was substantially embodied in the instructions to the jury. The second issue involved the legal basis of defendants' liability, but neither party seems to have analyzed this significant problem. It is necessary for us to do so before disposing of plaintiff's grounds for reversal.

█ This is a suit for damages and/or an injunction for the wrongful obstruction of the flow of surface water. With respect to adjoining landowners, Kentucky has adopted and followed the "civil law" rule which fixes the rights of the parties. The legal theory is stated in Pickerill v. City of Louisville, 125 Ky. 213, 100 S.W. 873, 875, as follows:

"In other words, this court has, in effect, though not in express terms, adopted in respect to such cases as this the rule of the civil law, which only subjects the lower estate to the easement or servitude of receiving the natural flow of surface water from the upper estate. That is to say, the doctrine seems to be that where two estates adjoin, and one is lower than the other, the lower must necessarily be subject to the natural flow of surface water from the upper one. If this proves to be an inconvenience, it arises solely from the position of the lower estate, and in the nature of the case is unavoidable. *Therefore the owner of the lower ground has no right to erect embankments, or create other obstructions, whereby the natural flow of surface water from the upper ground is stopped or caused to back upon and overflow the upper ground.*" (Our emphasis.)

This rule has been consistently followed in Kentucky. See Johnson v. Marcum, 152 Ky. 629, 153 S.W. 959; Hutchinson v. Copenhaver, 193 Ky. 301, 235 S.W. 761; Dugan v. Long, 234 Ky. 511, 28 S.W.2d 765; Coggins v. Coggins, 289 Ky. 570, 159 S.W.2d 4; White v. Howe, 293 Ky. 108, 168 S.W.2d 28. (It is also the accepted rule in many other states. See 93 C.J.S. Waters § 114, page 803.)

By a rather peculiar development this principle of absolute liability for the obstruction of surface water has been modified with respect to *railroad* embankments, fills and bridges. Originally the civil law rule was applied to obstructions created on easements obtained by railroads. Stith v. Louisville & N. R. Co., 109 Ky. 168, 58 S.W. 600; Louisville & N. R. Co. v. Brinton, 109 Ky. 180, 58 S.W. 604; Childers v. Louisville & N. R. Co., 74 S.W. 241, 24 Ky.Law Rep. 2375.

In 1908, in Wallingford v. Maysville & B. S. R. Co., 107 S.W. 781, 32 Ky.Law Rep. 1049, apparently because the petition alleged negligence, the court set forth in the opinion what it considered proper instructions in a suit against a railroad. These instructions based liability upon *negligence* in the construction or maintenance of a culvert under a railroad fill. The opinion does not cite a single authority, nor refer to the earlier cases, nor state a reason for the departure from the established civil law rule of absolute liability. Since that time a rather awkward theory of negligence in railroad cases has been followed. See cases cited under Stanley, Kentucky Instructions to Juries, Vol. 2, Section 740. (Madisonville, H. & E. R. Co. v. Cates,

138 Ky. 257, 127 S.W. 988, is rather unusual in quoting the civil law rule with approval and subsequently approving instructions based on negligence.)

There may be a valid reason for modifying the rule with respect to *railroad* structures and embankments built on easements because in the use of the easement it is contemplated that the topography of the land will be changed, which will almost necessarily interfere with the natural flow of surface water. However, whatever may be the justification for what we will designate the "railroad rule," it has not been extended to the owners of lands. (A strong argument may be made for the adoption of a "reasonable use" rule in all surface water obstruction cases, which offers a more practical and rational yardstick than the "negligence" principle applied in the railroad cases, although the same basic considerations are involved. See the excellent article by Messrs. Kinyon and McClure, "Interferences with Surface Waters" in Volume 24, Minnesota Law Review, page 891.)

 Since the civil law rule of absolute liability (quoted earlier in this opinion) was applicable under the facts of this case, the only issue that should have been submitted to the jury was whether or not defendants' access road fill caused the flooding of plaintiff's land. However, the case was submitted under typical "railroad rule" instructions. No contention is made that the court committed error in this respect and the plaintiff would not be in a position to claim such error since his offered instructions embodied that basis of liability. See Gibson v. Thomas, Ky., 307 S.W.2d 779.

 Plaintiff does contend the trial court erred in denying him an injunction. Clearly he could not be entitled to this form of relief in view of the jury verdict which determined the defendants had not committed a wrongful act.

 It is next contended the court erred in directing a verdict for the defendants Downs. Since their liability could only arise if plaintiff sustained his cause of action against the principal defendant Company, and no recovery was allowed against it, plaintiff could not be prejudiced by this ruling of the court even if it was erroneous.

Plaintiff next insists the court should have submitted the question of whether this fill was a temporary or a permanent structure. Since this issue is only important in determining the kind of relief to which the plaintiff might be entitled if successful, and since the jury verdict absolved defendants of liability, the question is now moot.

 Plaintiff argues the verdict was contrary to law because the proof showed defendants' drainage pipes were inadequate. Admitting such inadequacy, we have already pointed out that the vital issue of fact in the case was whether or not this fill caused the flooding of plaintiff's land. This is not a matter of law but was a fact question to be determined by the jury.

 Finally, the plaintiff contends the trial court erroneously failed to give two instructions offered by him. These instructions embodied the theory that if the defendant Company was negligent, and there was an extraordinary rainfall, and the negligence *concurred* with the extraordinary rainfall, then the Company would still be liable. The difficulty with plaintiff's position is that the *only* negligence of the defendant (which plaintiff made an issue by his other offered instructions) could have been the failure to anticipate this extraordinary rainfall. Under the "railroad rule" an extraordinary rainfall that could not reasonably be anticipated absolves the defendant of negligence. Plaintiff's two instructions incorporated a self-contradicting and irrational concept and were properly refused.

The judgment is affirmed.