CASE 19.—PETITIONS BY BETTIE W. BUTLER AND SALLIE F. SMITH AND OTHERS TO ADMIT TO PROBATE CERTAIN PAPERS PURPORTING TO BE THE LAST WILL OF JOHN BUTLER, DECEASED. FROM AN ORDER OF THE COUNTY COURT ADMITTING ONE OF THE PAPERS TO PROBATE AND REJECTING THE OTHER, BOTH PARTIES APPEAL TO THE CIRCUIT COURT, AND FROM THE JUDGMENT OF THE CIRCUIT COURT BOTH PARTIES APPEAL.— March 22.

# Bradshaw v. Butler, &c.
# Smith, &c., v. Butler, &c.

Appeal from Adair Circuit Court.

H. C. BAKER, Circuit Judge.

Judgment of the circuit court affirmed.

1. Wills — Probate — Establishment — Lost Wills — Pleading — Amendment.—In a proceeding to prove the contents of a lost

will, the court did not err in allowing an amendment to the
statement offered for probate in the county court, as contain-
ing the substance of the will after the cause had been appealed
to the circuit court, and during the progress of the trial.

2. Same—Hearing on Trial—Questions for Jury.—In order to
establish a lost will as the last will of a party, its execution,
substance, and that it was not revoked, must be clearly and
fully established to the satisfaction of the jury.

3. Same—Testamentary Capacity—Illness.—Where it was shown
that a testator could make himself understood to those who
prepared his will, the fact that he was unable to talk above
a whisper, and that those unfamiliar with his condition could
not understand him, was not proof of want of capacity.

4. Same—Evidence—Sufficiency.—In a proceeding to prove the
contents of a lost will, and have the same admitted to probate,
evidence showing that the will carried out an express purpose
of long standing with regard to testator's brothers and sisters,
and made a most natural and reasonable provision for his
wife and daughter, taken in connection with other evidence
was sufficient to sustain the finding that decedent had capacity
to make the will.

W. S. PRYOR and N. H. W. AARON, attorneys for appellant.

### SUMMARY.

1. When a will has been written and afterwards lost or
destroyed the presumption is "that it was revoked or destroyed
by the testator, and while this presumption may be rebutted, the
contents of the will cannot be proved unless by the clearest and
most stringent evidence."

2. Greenleaf on Evidence, sec. 688 15th edition—The draftsman
of the February will is not able to state the changes made when
he wrote that instrument, but when we have the positive state-
ment of the contents of a memorandum from which it was
written, and added to that the copy of the will as presented for
probate both in the county court and circuit court there can be
but little doubt as to the contents of the February will.

3. We maintain that in a case like this the whole will must
be established or not part of it.

4. Here was a man paralyzed in both mind and body, unable
to talk above a whisper—throat, tongue—all useless as much so
as the limbs he dragged after him, making a will in January,
another in February, another in March, all of the same year, and
changing his wills because he understood the people had heard

the manner in which he had disposed of his property. With no evidence that he understood the contents of any one of the wills except by signs given, and these papers go before first the county court and then the circuit court as containing the substance of his will, the one or the other, and then changing by producing copies that show other devises; to say that such a paper is the last will of decedent is a travesty of justice as well as against the law and the evidence in the case.

5. We insist from the record that Judge Butler's physical and mental condition was such at the time the so called will was executed that:    First, he had no will; second, that he was mentally unable to originate the conception of a will; third, that he was mentally and physically unable to communicate or dictate to a draftsman the provision of a will; fourth, that he had no fixed purpose of his own as to 'how he wanted to dispose of his property; the three wills in rapid succession without special reason therefor, testify that he had no fixed purpose; fifth, that he did not dispose of his property according to any purpose of his own.

ROLLIN HURT and MONTGOMERY & MONTGOMERY for appellees.

### CLASSIFICATION OF POINTS AND AUTHORITIES.

1. The verdict of the jury is fully sustained by the evidence and is in accordance with the decided weight of the evidence.

2. The testator's fixed purpose as previously expressed.

3. The testator was not physically nor mentally capable of making a testatmentary disposition of his property, at the date of the will of March 27, 1905.

4. If he had mind sufficient to make a will, or any mind, he was unduly influenced to make the will of March 27, 1905.

5. On February 20, 1905, testator was capable of making a will.

6. The contents of the will of February 20, 1905, are fully proven as well as its execution. (Kentucky Statutes, section 4850; Howats v. Howats Ex'or, 41 S. W., 771; Lischy v. Strader, 47 S. W., 611; White v. Cole, 47 S. W., 759; Williams v. Williams, 1 S. W., 419.)

7. All the errors of the court, in admitting and rejecting offered evidence were rulings favorable to appellant.

8. The instructions contain the entire law of the case and have been often approved by this court.

9. Mental capacity to make a will.    (Wise v. Foote, 81 Ky., 10; Harper's Will, 4 Bibb, 244; McDaniel's Will, 2 J. J. Mar-

Bradshaw ·v. Butler, &c.

shall, 331; Woodford v. Buckner, 63 S.-W., 617; Murphy's Ex'or v. Murphy, 65 S. W., 165; Wilson v. Hays Ex'or, 58 S. W., 773; Dunaway v. Smoot, 67 S. W., 63; Oberdorfer v. Newberger, 67 S. W., 267.)

10. Undue influence. (Lucas v. Cannon, 13 Bush, 650; Oberdorfer v. Newberger, 67 S. W., 267.)

11. The same capacity is necessary to revoke a will as to make one. (Gains v. Gains, 2 A. K. M., 190; Allison v. Allison, 7 Dana, 90.)

12. A revocation of a will procured by an undue influence is not a revocation in law. (American and English Encyclopedia of Law, vol. 27, p. 561; Schouler v. Mills, sec. 4 (2nd ed.) S. S. 384, 427a.)

13. It was the duty of the court to see that the verdict of the jury was put into proper shape to clearly carry out the findings and to insert in it the necessary and appropriate words to convey the meaning of the jury. (Craig v. Taylor, 10 B. M.. 53; Tarlton v. Briscoe, 2 Bibb, 428; Adams v. Landrum, 9 Ky. Law Rep., 287; Berger & Mehan Co. v. Sears, 67 S. W., 1002.)

W. W. JONES and JAS. GARNETT, attorneys for appellees.

### POINTS AND AUTHORITIES CITED.

We submit:

1. The trial in the circuit court is a trial de novo, and every paper claimed as testatmentary must be produced; the circuit court for the time being, becoming a probate court. It is a well established rule that no will offered in the county court can be established in the county court which is inconsistent in any of its provisions with one which has already been established in the county court.

2. The instructions are plainly the law and each proposition in them has been upheld by this court in numerous cases, except the proposition that when a will is revoked by the undue influence of some other person the revocation is void and the will attempted to be revoked stands.

3. In such a case the same reason exists for holding the revocation void, when procured by undue influence, as when the will revoking the former will is set aside for undue influence.

4. The proof shows conclusively that the last will, the one probated in the county court, was duly executed and the fact that the jury set it aside is no doubt due to the belief of the jury that it was procured by undue influence.

5. The second will, the substance of which was established

in the circuit court, was destroyed by testator himself at the time the last will was delivered according to the testimony of appellant. She, and she only, states this to be a fact.

6. The manner of revoking the second will was the execution of the last will. The destruction of the second will was only a part of the transaction in executing the third one and cannot be separated from it. If the third will was procured by undue influence then it must follow that the revocation of the second was procured by undue influence and was void which leaves the second will in force.

### AUTHORITIES.

Civil Code, sec. 325; 1 Bibb, 247; 24 Ky. Law Rep., 80, 27 Ky. Law Rep., 1055; Ky. Statutes, 4859; A. & E. Encyclopedia of Law, vol. 22, 516; Redfield on Wills, vol. 1, 3064a; Menenhall, &c., v. Tungate, 95 Ky., 208; Practice of Medicine, 636-638, 13 Ky. Law Rep., 24, 92 Ky., 204.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

John Butler, a resident of Adair county, died in the year 1905. He left no children. He was survived by his wife, Bettie W. Butler, and an adopted daughter, Grace Butler Bradshaw, and several brothers and sisters, and the descendants of such brothers and sisters as were dead. Shortly after his death his wife offered for probate in the county court a paper, purporting to be his last will and testament, bearing date of March 27, 1905. This will was admitted to probate over the objection of the brothers and sisters and adopted daughter of John Butler. Thereafter the brothers and sisters of the decedent filed a petition in the county court, setting forth the contents of another will which had been executed by John Butler, and asked that the same be probated as the substance of a lost will. The widow, Bettie W. Butler, objected to the probate of this paper, and its probate was refused. An appeal was prosecuted to

the circuit court from the order of the county court
in probating the first will bearing date of March 27,
1905, and also from the order of the county court
in refusing to probate the substance of the lost will
alleged to have been executed in February, 1905.
These two cases were, by agreement, consolidated,
and, upon trial, the jury found the writing purport-
ing to give the substance of the will made in Feb-
ruary, 1905, to be the true last will and testament
of John Butler, and judgment having been entered'
upon this finding and verdict of the jury, Grace
Butler Bradshaw prosecutes this appeal.

Although the widow, Bettie W. Butler, appealed
from the judgment of the Adair circuit court, reject-
ing the will of March 27, 1905, she has later aban-
doned her appeal, and the only question to be deter-
mined now is: "Did the pleadings and proof support
the finding of the jury and the judgment of the court
in probating the substance of the paper bearing date
February —, 1905, offered as and for the last will
of John Butler? The evidence discloses the fact that
John Butler and his wife, some 22 or 23 years before,
they having no children, had adopted, in legal form,
the appellant, Grace Butler Bradshaw; she at that
time being about five years old. After her adoption
he and his wife had treated her as their own child
giving her the advantages of a good education. reared
her from childhood to womanhood in their home; and,
although she had married, she had continued to live
at their home with them as a member of their family,
with her husband, until the time of the death of her
foster parent. The proof shows that the deceased
was a vigorous, active, prosperous man; that he
accumulated a comfortable estate, was elected to the
office of county judge; and that some time in the year

1900 he suffered what proved later to be a stroke of paralysis, which affected one side, and so disabled him that during the latter years of his official life it was with difficulty that he attended to the duties of his office. As time passed on, this disease so affected him as that during the latter months of his life he was totally incapacitated physically to attend to business In January, 1905, evidently recognizing that he was failing rapidly, he sent for Judge Garnett, who has since died, and had him prepare for him a will, which was duly executed. This will was later destroyed, and is not in controversy. James Garnett, a son of the judge who wrote the will in January, was some time in February called upon to draft a will for decedent, and this will is the one, the substance of which a jury has said is the true last will and testament of John Butler, deceased. In the month of March, 1905, the third and last will was written.

The grounds of contest relied upon to defeat the probate of each of the wills which were in contest were want of capacity and undue influence. The paper which the jury found to contain the substance of the true last will and testament of deceased is as follows:

"I, John W. Butler, of Adair county, make and publish this my last will and testament, hereby revoking all former wills made by me.

"1st. I direct that all of my just debts and funeral expenses be paid.

"2nd. I will and devise to my brothers and sisters, who are living, and to the heirs of those who are dead, the sum of five thousand dollars, to be divided between them; that is, one-tenth to my brothers and sisters who are living, and one-tenth to the heirs of

each of my brothers and sisters who are dead. These sums are to be paid to them by my executor.

"3rd. I will and devise to my beloved wife, Bettie W. Butler, for and during her life all the remainder and residue of my estate of every kind, real and personal and mixed, including my farm of 192 acres which was conveyed to me by W. E. Frazer, and at her death to our daughter, Grace Butler Bradshaw; but should our said daughter, Grace Butler Bradshaw, die without issue, then what remains of my estate shall be divided in two equal parts, and one-half thereof shall go to my brothers and sisters and their heirs, as directed in the second clause of this will, and the other half shall go to the brothers and sisters of my said wife, or to their heirs.

"4th. I authorize my wife to sell and convey any or all of my real estate and to pass the fee-simple title to same.

"5th. I appoint my wife, Bettie W. Butler, executrix of this my last will, and request that she be permitted to qualify without security.

"Executed as my last will and testament, this 20th day of February, 1905.

"[Signed]                                John W. Butler.
"Witness: R. F. Paul.            W. A. Coffey."

The grounds relied upon for reversal by appellant are numerous, but we will notice only those grounds which appellant's counsel contend would authorize a reversal.

Appellant's first objection is that the circuit court permitted appellees to amend the statement which they had offered for probate in the county court, as containing the substance of the will of date February 20, 1905, after the case had been appealed to the circuit court and during the progress of the trial. It

is most earnestly insisted that this was error preju-
dicial to the rights of appellant; that appellees should
have been required in the circuit court to confine them-
selves to the probate of this paper, as it was offered
in the county court, and that they should not have been
permitted to amend same during the progress of the
trial; appellant's contention being that this identical
paper having been offered as the substance of the
February will, the court, by permitting it to be
amended, required appellant to try a different ques-
tion from that which was presented to the county
judge. The paper offered for probate in the county
court, in substance, gave to the decedent's brothers
and sisters, and the children of such as were dead.
$5,000, and the remainder of his estate to his wife
for life, and, after her death, to appellant. In the cir-
cuit court, appellees were, over the objection of appel-
lant, permitted to amend this statement in this: That
the will further provided that in the event that appel-
lant died leaving no children, then the property at her
death should go to the heirs at law of decedent and
his wife; his heirs receiving one-half, and hers the
remainder. Counsel for appellant insists that this
was error.

In the case of Steele, etc., v. Price and wife, 44 Ky.
58, where a paper offered for probate in the county
court as and for the substance of the last will of
William Steele, contained a provision giving to his
niece, Elizabeth Price, "my two slaves, Patsy and
Mary," and upon appeal to the circuit court the jury
found that instead of the words "my two slaves, Pat-
sey and Mary," the words "my slaves, Lucy, Mary,
and Bob," should be inserted; it was contended that
this change furnished ground for reversal. Chief
Justice Marshall, delivering the opinion, said: "Upon

this point, we have been referred to no authority, and perhaps there is none directly in point.  *  *  * The whole proof related to the same will; there was no attempt to defeat the probate of one will by showing that another was afterwards executed; but the only question was as to the original validity and contents, and revocation of the same written will.  And, as we cannot suppose that the draft that was offered could have restricted the general power of the county court to inquire and determine what were the real contents of the lost will, and to record them according to the proof, so we suppose, the circuit court, becoming by the appeal possessed of the same power and jurisdiction to inquire and determine what were the contents of the will, and to establish them upon original proof delivered before it, was not restricted to the establishment or rejection, either of the original draft as presented in the county court, or of the will as therein recorded.''

In the case at bar the paper offered for probate in the county court, as containing the substance of the February will, gave the fee to appellant, just as the paper offered for probate as containing the substance of the Steele will gave to his niece two slaves; and in the circuit court, in the case before us, appellees were permitted to amend the statement so as to change the interest which appellant had in the estate from that of a fee to that of defeasible fee, her interest in the estate being, thereby, diminished; whereas, in the Steele case above referred to, the change was from two slaves to three slaves, thereby enlarging the interest of the legatee under the will.  We are of opinion that, if it was not error for the jury to find that a devise to a particular legatee should be in-

creased, it was not error for the trial court to permit the amended statement to be filed in this case

Appellant's next contention is that the substance of the February will was not sufficiently proven to authorize the jury to find it to be the true last will and testament of the deceased. Courts have, with a degree of uniformity, held that in order to establish a lost will, its execution, substance, and that it was not revoked, must be clearly, fully, and satisfactorily established; but we take it that these facts must be established to the satisfaction of the jury, who are the triers of the facts, and that it would not be proper for the court to say to the jury that, before they could find the paper offered as and for the substance of the will to be the true last will and testament of deceased, the proof should be full, clear, and satisfactory. The execution of a lost will must be proven the same as the execution of a will that is not lost. Its substance must be proven to the satisfaction of the jury the same as the substance of any other lost instrument of writing would be proven, and it must be established to the satisfaction of the jury that it was not revoked.

On the question of the execution of the will in February, appellant makes no serious contention but that the will was executed in due form. The proof upon this point is ample, full, and complete. As to the substance of this will, we are of opinion that it likewise is clearly proven; for, while it is true that the draftsman omitted to incorporate in the paper, which was offered to the county court for probate, one of the provisions which it contained when finally submitted to the jury in the circuit court, as said in the Steele case, supra, it was the province of the jury to determine what were the provisions of the Feb-

ruary will as developed by the testimony, and not from the statement thereof filed with the pleadings. There is no material difference as to the provisions of the February will between the testimony of appellant and the draftsman, Mr. Garnett; in fact, they agree as to all the provisions of the will, except that clause which gave to appellant a defeasible fee, rather than a fee-simple title, in the land. We are of opinion that the evidence offered on this point supports the finding of the jury as to the substance of the February will. No point is made by appellant that this will was intentionally destroyed or revoked by the testator, and there is evidence to support the finding of the jury that it was not revoked.

Appellant insists with much earnestness that the court erred in permitting testimony to go to the jury as to the provisions of the January will. This point is not well taken, for the reason that one of the grounds of contest was that decedent did not have capacity sufficient to make a will. In order to show capacity, it was proper for the propounder to show that the testator was acting with a fixed purpose in executing the will which the jury found to be his true last will and testament; and the fact that the provisions of the January will were practically the same as those of the will executed in February might properly go to the jury as an evidence that the testator was acting with a fixed purpose. The latitude allowed in the introduction of testimony in will contests is very broad, and it has frequently been held competent to show that decedent had made other wills similar to the one in contest, for the purpose of establishing capacity.

It is insisted as evidence of want of capacity that decedent was unable to express himself above a whis-

per, and that it was with difficulty that he could make himself understood at all. It is true that his tongue and throat and vocal organs were seriously affected by the paralysis which gradually grew worse during the latter months of his life; but it is equally true that deceased could make himself and his wants and desires known and understood by those who were constantly associated with him, and among them appellant. She made a draft or memorandum for him, from which Mr. Garnett drew the February will, and it is evident from reading her testimony that decedent could make his wants known to her, and both she and Mr. Garnett, the draftsman of this will, testify that the will was prepared from notes and memoranda made by her. The fact that the testator was unable to talk above a whisper, and that those unfamiliar with his condition were unable to understand him, was not an evidence of want of capacity when considered in the light of appellant's testimony. Besides, the testimony of the wife and other witnesses who were associated with him during the latter months of his life tends strongly to refute the idea that, when he executed the February will, he did not have sufficient capacity to know who were the objects of his bounty, and to enable him to know what estate he owned, and to make a disposition thereof according to a fixed purpose of his own. The proof is abundant that he had frequently said that he intended to make provision for his brothers and sisters, and the children of such as were dead. The January will, as well as the February will, contained such a provision, and the evidence tends to show that even in the execution of the March will, while he gave everything to his wife, he requested of her that she carry out his wishes in this particular. It is likewise true that, in each of

the wills which were drawn by him, he was endeavoring to make provision for the comfortable maintenance and support of his wife during her life. · All of the wills were practically the same in this particular. In the will which the jury found to be his last will and testament, he gave all of his property over and above a bequest of $5,000 to his brothers and sisters to his wife for life, with remainder to appellant, his adopted daughter, for life; and, in the event she left no children, then this property was to be divided between his relatives and his wife's relatives—one-half to each side.

As it has been held that where the provisions of a will are unnatural this fact may be given to the jury as an evidence that the testator was unduly influenced, or did not have sufficient capacity to make a will, so where the provisions of a will are natural and just, this fact may or should be considered by the jury in determining whether or not deceased was competent to make a will; and, in doing so, was not unduly influenced. It is in evidence that decedent's relatives had rendered him valuable assistance in his political campaigns, and had otherwise been of service to him in his public life, and he had frequently said that, as a reward for these services, he intended them to have a portion of his estate. These statements were made by him at a time when he was strong mentally and physically, and hence, in making the provision for these relatives which he did in his will, he was simply carrying out a purpose of long standing.

We take it that no one will question the wisdom or justness of that portion of his will in which he gives the remainder of his estate to his wife for life. During the long years of their married life, she had

materially assisted him in accumulating this estate, and it was but husbandlike, natural, and right that he should make ample provision for her during the remainder of her life. It is likewise true that he owed a duty to the child of his adoption. He recognized this duty; and, in his will, which the jury said was his last will, he provided that after the death of his wife all of his property should go to the child for her use during her life. In so doing, he provided as fully and amply for her comfort and support as he did for that of his own wife; the only difference being that the appellant's interest in the estate of decedent was postponed until the death of her foster mother. The provision that the property should revert to the heirs of himself and his wife in the event that his adopted daughter died leaving no child or children was not an evidence of want of capacity on his part.

Taken, then as a whole, the will carried out an express purpose of long standing with regard to his brothers and sisters. It made a most natural and reasonable provision for his wife, and, at her death, gave to appellant, his daughter by adoption, his entire estate during her life; and, being both reasonable and just, the provisions of this will, when taken in connection with other evidence, tend to support the theory and contention of the propounders that decedent had sufficient capacity to make a will.

The instructions given properly presented to the jury the questions in issue, and we are of opinion that the evidence amply supports the verdict of the jury; and there being no error prejudicial to the rights of appellant, the judgment is affirmed.