CASE 35—ACTION BY J. W. CATES AGAINST THE MADISON-VILLE, HARTFORD & EASTERN RAILROAD COMPANY.—April 27, 1910.

## Madisonville, H. & E. R. R. Co. v. Cates.

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiff and defendant appeals.— Affirmed.

1. Waters and Water Courses—Surface Waters—Lower Estate. —A lower estate is only subject to the servitude of receiving the natural flow of surface water from the upper estate, and hence has no right to erect embankments, or create other obstructions, whereby the natural flow of the surface water from the upper ground is stopped or caused to back on and overflow the upper ground, nor has the owner of the upper ground any right to make excavations, barrier, or drains on his ground by which the flow of the surface water is diverted from its natural channel, and a new channel made on the lower ground, nor can he collect into one channel waters flowing on his neighbor's land by several channels, and thereby increase the flow.

2. Damages—Duty to Minimize—Injuries to Property.—Where defendant, by negligently diverting surface water from its natural and customary channels, and by obstructing its natural course, caused it to overflow plaintiff's land in greater

vol. 138—17

and unusual quantities than was its wont, and to injure his crops, defendant could not object that plaintiff did not minimize his damages, plaintiff being under no duty to relieve defendant of the consequences of its negligence.

3 Waters and Water Courses—Obstruction of Surface Water —Actions—Instructions.—In an action against a railroad company for obstructing a water course, an instruction that if defendant negligently constructed its roadbed on the north side of plaintiff's land, filling, obstructing, or diverting the channel of a creek, and thereby negligently diverting the waters running therein from their natural course, causing them to overflow plaintiff's land, by reason whereof his crops, or a portion thereof, were flooded, destroyed, or injured by ordinary rain-falls, plaintiff could recover, provided the branch at the time of the diversion was a natural water course, etc., was proper.

4 Damages—Injury to Crops—Instructions.—Where, in an action against a railroad company for obstructing a water course, the only damages claimed or proved were for injury to plaintiff's crops, an instruction confining plaintiff's recovery to reasonable compensation for the diminution in value of the crops, giving the limit and amount as to each crop, and the limit as a whole, was in substantial conformity to the rule that plaintiff's measure of damages was the value of so much of the crops as were wholly destroyed while standing on the ground, and the depreciation in the value of the remainder.

5. Trial (Section 260 )—Instructions—Refusal of Request.— Where the charge of the court covers the whole case, it is not error to refuse a requested charge, though correct.

C. J. WADDLE, BENJ. D. WARFIELD and CHARLES H. MOORMAN for appellant.

GIBSON & KINCHELOE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee recovered of appellant in the court below a verdict and judgment for $500 damages, resulting from the flooding of his land, and injury to certain crops produced and growing thereon, caused,

as alleged, by the wrongful acts of appellant's servants in negligently diverting the waters of a stream called "Greasy Creek," and those of a tributary branch, from the natural beds or channels in which they were accustomed to stand and run, and causing them, in unusual volume and quantity, to overflow and stand upon appellee's land and crops. Appellant filed an answer of two paragraphs; the first containing a traverse, and the second, a plea of contributory negligence, based upon appellee's alleged failure to ditch his land and construct fills or levees on and along the banks of the creek. The plea of contributory negligence was controverted by reply. The several items of damage claimed in the petition amounted in the aggregate to $1,027.50, consisting, as alleged, of injuries from overflows to the following crops destroyed in whole or in part in the year 1907: Eleven acres of tobacco; 4 1-2 acres of millet; 7 acres of stock peas; and 20 acres of growing grass, in the year 1908. The evidence did not sustain the entire claim of damages asserted by the appellee, but a number of witnesses testified that his damages amounted to as much as the jury awarded him; therefore no ground exists for appellant's contention that the verdict was unsupported by the evidence, or that it was excessive. Appellee's farm of 80 acres lies 1 mile west of Madisonville on the south side of appellant's line of railroad, which was constructed between the beginning of the year 1906 and the end of the year 1909. We make a part of this opinion the map used on the trial in the court below, which appears in the record:

Appellee's farm is crossed by the Providence Branch Railroad which leaves appellant's main line, the Madisonville, Hartford & Eastern Railroad near where it enters appellee's land; and also a county road leading into Madisonville which runs parallel with and a short distance from the Madisonville, Hartford & Eastern Railroad. Greasy creek constitutes the eastern boundary of appellee's farm, and on the east of Greasy creek lies the land of Lunsford. The branch filled by appellant in constructing its roadbed is designated on the map by the figure "5." This branch before it was filled crossed appellant's railroad twice; first, from the south to the north side thereof at figure "6" on the map, and, after running in an easterly course north of the railroad a distance of several hundred yards, again crossed it from the north to the south side near the point where it emptied into Greasy creek. It was claimed by appellee that 25 acres of his land lying south of appellant's railroad and west of Greasy creek, 3 acres of it being between the Providence Branch Railroad and the public road, was, during and following ordinary rains, subjected to overflow by the negligent acts of appellant complained of, and that such overflow injured the crops thereon as alleged in the petition. Appellee further claimed, and his evidence conduced to prove, that the branch or ditch north of appellant's railroad which appellant's filled in constructing its roadbed was 10 feet in width and 7 or 8 feet in depth, and had been in existence for 40 years; that all that time it and Greasy creek together, during the usual and excessive rains and high water, carried off all water that fell or gathered upon appellee's land; that when the quantity of water that flowed into the creek was too great to be contained within its banks,

it would back up and into the branch whose great depth and width would accommodate the extra volume of water, as well as what ran into it from the adjacent lands on either side, without overflowing its banks, and thus hold the water until the flood in the creek would subside, and by this means appellee's land was drained of the water.

We think it reasonably apparent from the evidence as a whole that if appellant had left the branch open, and provided a culvert at each of the two places where it is crossed by its roadbed, the branch and Greasy creek would have continued to carry off the water from appellee's land, and thereby prevented the injury to his crops complained of, but by filling the branch the water which had been wont to flow from appellee's land into its bed, and that which had been accustomed to temporarily back into it from Greasy creek when that stream overflowed its banks, was by the obstruction afforded by the bed of the railroad which constituted a fill along the entire north boundary to appellee's land, forced and backed upon his land in such unusual quantities as to inundate it and overflow his crops. It likewise appears from some of the evidence that appellant further added to the increased flow of the water upon appellee's land by leaving unfilled that part of the branch south of its railroad and opening a ditch on the south side of its railroad from the mouth of the branch and Greasy creek at the northeast corner of appellee's land, to a point beyond the west line of his land; in doing which a part of the west bank of the creek, at figure "4" on the map, was removed or lowered to such an extent as to cause much of the water when the creek was high to leave its bed and channel, and run into the branch and ditch on the south side of the railroad,

from which, on account of their want of capacity to hold the water, it overflowed appellee's land in increased and unusual quantity. The jury evidently accepted the evidence adduced in support of the theory upon which appellee sought a recovery. We cannot say that the verdict was without support from the evidence, and there can be no controversy as to the law of the case.

In Pickerill v. City of Louisville, 125 Ky. 213, 100 S. W. 837, 20 Ky. Law Rep. 1239, a case much like the one before us, it was said: "This court has in effect, though not in express terms, adopted, in respect to such cases as this, the rule of the civil law, which only subjects the lower estate to the easement or servitude of receiving the natural flow of surface water from the upper estate. That is to say, the doctrine seems to be that where two estates join, and one is lower than the other, the lower must necessarily be subject to the natural flow of surface water from the upper one; if this proves to be an inconvenience, it arises only from the position of the lower estate, and in the nature of the case is unavoidable.· Therefore the owner of the lower ground has no right to erect embankments, or create other obstructions, whereby the natural flow of the surface water from the upper ground is stopped· or caused to back upon and overflow the upper ground. On the other hand, the owner of the upper ground has no right to make excavations, barriers, or drains upon his ground by which the flow of surface water is diverted from its natural channel, and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbor's land by several channels,

and thereby increase the flow upon the lower ground."

The greater part of appellant's evidence was directed to showing that appellee's land was subject to overflow, or at any rate standing water, before the construction of its railroad, and that by ditching his land or erecting on the bank of Greasy creek, near its railroad, an embankment or levee, he might have prevented its overflow, or at least have lessened the injury to his crops, and thereby minimized his damages. While it is true some of appellee's land was wet land, and for that reason more liable to injury from overflow of water in greater quantity than was natural or usual, it was not, according to the evidence, so wet as to interfere with its profitable cultivation, until the wrongful acts of appellant complained of caused its overflow; and if, as alleged in the petition and in large measure shown by the evidence, appellant, by negligently diverting the water from its natural and customary channels, or by obstructing its natural and usual course, caused it to overflow in greater and unusual quantity upon appellee's land than was its wont, and to the injury of his crops, it does not lie in its mouth to complain that appellee did not minimize his damages. Indeed, he was under no duty to relieve appellant of the consequences of its negligence, and could have done nothing in the matter of minimizing his damages, that would have been so effectual as the restoration by appellant of the natural channels by which his land was drained and its overflow prevented, before they were closed or changed by appellant.

If the evidence had shown that the damages sustained by appellee from the overflowing of his land were inconsequential, or that he might at slight ex-

pense have avoided the injury to his crops, there might be some reason for insisting that he was guilty of negligence in failing to do so, but such were not the facts in this case, the injury was more than trivial, and the expense of restoring the drains would have been considerable and more than appellee should have been required to bear.

Appellant's objections to the instructions are not well founded. The four instructions given read as follows:

"(1) The court instructs the jury that if they believe from the evidence that the defendant at the time complained of in the petition herein built and constructed its roadbed on the north side of plaintiff's land therein described, and thereby negligently, unlawfully, or without right filled or obstructed or diverted the channel of Greasy creek, or the branch running along the north side of plaintiff's land, and thereby unlawfully and negligently diverted the flow of waters running in said creek or branch from their natural course, and caused them to overflow the plaintiff's said land, and by reason thereof the plaintiff's crops, or any portion thereof which were being cultivated by him during the years 1907 and 1908, were flooded, destroyed, or injured by ordinary rainfalls, then the jury should find for the plaintiff, provided they believed from the evidence that the said branch was at the time of the diversion of the waters therefrom, if there was such diversion, a natural water course, and in assessing the plaintiff's damages, if any they should find, they will be governed by instruction No. 2.

"(2) If the jury find their verdict for the plaintiff, they will award him such sum in damages as will rea-

sonably compensate him for any loss he may have sustained by reason of the unlawful or negligent diversion of the waters of Greasy creek or of the branch running north of plaintiff's farm mentioned in the pleadings and in the evidence, if there was such a diversion to his crops then being cultivated by him on said land, and not exceeding in damages, if any they should find, such a sum as will reasonably compensate him for the diminution to value to said crops at said time they were damaged, not exceeding the sum of $687.50, damage to his tobacco crop in the year 1907; to his millet crop in the year 1907, the sum of $75; to his pea crop in the year 1907, $25; to his hay crop in the year 1908, the sum of $240—and in all not exceeding the sum of $1,027.50.

"(3) The defendant cannot be held responsible for any injury or damage to his crop or crops caused by extraordinary floods or overflows.

"(4) By the term 'negligence,' as used in these instructions, is meant the failure to exercise ordinary care, and ordinary care is that degree of care which an ordinarily prudent person will usually exercise under the same or similar circumstances."

Instruction No. 1 is predicated upon the cause of action stated in the petition, and is, we think, in proper form. It is insisted, however, that instruction 2 does not correctly give the measure of damages. The only damage asked in the petition, or shown by the evidence, was for injury to appellee's crops; the instruction confined the recovery, if any damages should be allowed, to reasonable compensation for the diminution in value to the crops, giving the limit in amount to each crop, and the limit as to the whole. Manifestly this was a substantially correct statement

of the law; the measure of damages for injury to appellee's crops by the overflowing of his land was the value while standing upon the ground, of so much of the crops as were wholly destroyed, and the depreciation in the value of the remainder. No injury was shown to the land, and consequently no instruction was given on that subject.

We do not understand that instructions 3 and 4 are objected to; they are, however, substantially correct. We do not think the court erred in refusing the instructions asked by appellant, as those given contained the whole law of the case, and, when this is so, unnecessary instructions, however correct, are calculated to confuse or mislead the jury.

Judgment affirmed.