## Moody v. Fremd. et al.

(Decided October 5, 1917.)

### Appeal from Henry Circuit Court.

1. Waters and Water Courses—Surface Waters.—Where two city lots adjoin and one lies higher than the other, the lower lot is subject to the easements and servitude of receiving the natural flow of surface water from the upper estate.
2. Waters and Water Courses—Surface Waters.—One owning a lower estate may not erect and maintain embankments or other obstructions which will interfere with the natural flow of surface water from the upper estate on to the lower, and if one obstructs the flow of such water a court of equity, upon proper application, will require the wrongdoer to remove the obstruction and to desist from further interference.
3. Waters and Water Courses—Surface Waters.—The owner of the upper estate may not collect and concentrate the surface water at one point upon his property and turn it in such volume as will cause erosion of the soil of the servient estate.

C. C. HIEATT and JOHNSON, HIEATT & SCHERICH for appellant.

MOODY & BARBOUR for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellant, Mrs. Anna D. Moody, widow, owns a lot adjoining that of appellee, Mrs. Savannah O. Fremd, facing on Main street, in the city of Eminence, and they each reside and have their homes upon this property. Mrs. Fremd's lot faces 200 feet upon Main street, and extends back some four or five hundred feet, while Mrs. Moody's lot faces 93 feet upon Main street and extends back a like distance. Appellee's lot is on higher ground than appellant's and the natural drain of surface water from a part of the lot of Mrs. Fremd's is down towards Mrs. Moody. About nine years before the commencement of this action Mrs. Fremd made numerous improvements

upon her lot, one of which was to build and construct a brick wall along the line between her and Mrs. Moody. While the wall stands entirely upon Mrs. Fremd's lot, it is also at the edge of Mrs. Moody's. The wall is from 2½ feet to 7 or 8 feet in height, and interferes with the natural flow of water from the lot of Mrs. Fremd, and through a system of drainage installed by Mrs. Fremd and her predecessors, the water is carried back to a natural drain or swag, which originates in Mrs. Fremd's lot and extends across Mrs. Moody's into other property. It appears that there is but one aperture left in the brick wall for the passage of this water, but this opening is exactly on the natural drain in the swag. Mrs. Moody made no complaint whatever of the flow of the water until she discovered, as she thought, soap suds and bluing water flowing through this opening in the wall from the system of drainage on Mrs. Fremd's property. This polluted water, she charges, created a stench around which flies gathered. She then protested against the turning of water on to her property, but without results, as she claims. Thereupon she procured several wagon loads of dirt to be thrown into the sewer opening in the wall upon her side of the fence, so as to stop the flow of the water. While the drainage was thus stopped up an unusual rainfall came which caused quite a flood, and the opening in the drainage being so closed, the water was forced back upon the land of Mrs. Fremd, and pressing against the brick wall caused a considerable part of it to fall on to Mrs. Moody's ground.

Immediately thereafter, Mrs. Fremd, her husband joining with her, instituted this action to recover damages for the injury to the wall, and seeking a perpetual injunction against Mrs. Moody restraining her from obstructing the outlet of water through the brick wall, and a mandatory injunction to remove the obstruction theretofore placed in the outlet. Appellant answered, admitting the placing of the dirt in the outlet and the obstruction of the flow of water, but alleging that Mrs. Fremd had wrongfully collected, by means of drain pipes, the water upon her premises at one point and turned it on to appellant's lot in an unusual volume, causing erosion of the soil and the washing of gulleys to her damage; and further that the brick wall of appellee which had fallen upon the lands of appellant had obstructed her free use of her property, also to her damage.

By reply issue was joined, and it was affirmatively alleged that the water complained of had coursed the same channel continuously for more than fifteen years next before the institution of the action, and by reason thereof, appellee had a prescriptive right to so turn the water. This last allegation was not traversed either by rejoinder or of record. The proof, however, proceeded as though issue had been joined upon the claim of prescription as well as upon the several other issues.

Upon hearing the chancellor granted appellee a mandatory injunction against Mrs. Moody requiring her to remove the obstruction placed in the outlet of the drainage and perpetually enjoined her from interfering with or obstructing the flow of water through the aperture; and also enjoined Mrs. Fremd from turning soap suds or other polluted water through said drainage on to the lot of Mrs. Moody, or any other than the natural surface water. The judgment dismissed plaintiff's claim for damages, and also that of the defendant set up in her counter-claim. From this judgment the defendant prosecutes an appeal and the plaintiff a cross-appeal.

It is a well-established rule in this jurisdiction that the lower estate is subject to the easement or servitude of receiving the natural flow of surface water from the upper estate. Where two estates adjoin and one is lower than the other, the lower must necessarily be subject to the natural flow of surface water from the upper one. As said by this court in the case of Pickerill v. City of Louisville, &c., 125 Ky. 213:

"If this proves to be an inconvenience, it arises solely from the position of the lower estate, and in the nature of the case is unavoidable. Therefore, the owner of the lower ground has no right to erect embankments, or create other obstructions, whereby the natural flow of surface water from the upper ground is stopped or caused to back upon and overflow the upper ground. On the other hand, the owner of the upper ground has no right to make excavations, barriers, or drains upon his ground by which the flow of surface water is diverted from its natural channel and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbors' land by several channels, and thereby increase the flow upon the lower ground. Kemper v. City of Louisville, 14 Bush 87; Hahn v. Thornberry, 7 Bush 403."

In the case of Grinstead v. Sanders, 56 S. W. 665, a very similar question to the one here arose. Grinstead and Sanders owned adjoining tracts of swampy land; for many years the surface water from Sanders' land ran on to Grinstead's land, and from there into a large sink hole. Sanders cut two large ditches through his land by means of which a considerable area of swampy land was drained on to Grinstead's land. To prevent this increased flow of water on to his premises, Grinstead erected a dam which caused the water to back upon Sanders' land, whereupon Sanders sued to compel Grinstead to remove the dam. The court held that Grinstead's land by reason of its location was compelled to receive the surface water, which flowed naturally from Sanders' land, and that he had no right to obstruct the flow by the erection of the dam, and further Sanders should close the ditches which he had dug on his land and which carried the water on to the property of Grinstead, as this increased the flow of water to the servient estate.

Here Mrs. Moody obstructed the flow of the water on to her premises by heaping dirt in the outlet in the drain, thereby casting the water back upon Mrs. Fremd's lot, to her damage. Some courts hold to the doctrine that where water which does not naturally flow that way, if cast upon premises without the owner's consent, such owner may, if he can do so without breach of peace, lawfully obstruct the wrongful flow of such water upon his premises. In those cases so holding the obstruction of the flow is treated as a private nuisance, which may be abated by the injured party, if it can be done without the commission of a breach of the peace. In this case the water had flowed in the same channel for many years without objection, and it would not do to hold that it was a private nuisance subject to abatement at the will of the injured party where great injury was likely to result from such action, especially when ample remedy is afforded by the courts. Adhering to the principle repeatedly announced by this court that the owner of the lower ground has no right to erect embankments or create other obstructions whereby the natural flow of surface water from the upper ground is estopped or caused to back upon and overflow the upper ground, the lower court afforded the owner of the upper ground relief by injunction and likewise stayed appellee by similar order from emptying soap suds and other deleterious water from the premises of appellant.

While the evidence is conflicting as to how long the water which fell upon plaintiff's lot was drained along the channel which it now courses, there was evidence tending to show that this had continued for more than fifteen years next before the commencement of this action, indeed one witness says more than thirty years. The trial court evidently so found the facts, and under our rule announced in Campbell v. Trosper, 108 Ky. 602:

"Where the evidence is conflicting, some weight will be given to the finding of the chancellor, and it will not be disturbed if upon the whole case the mind is left in doubt as to the truth."

The judgment will not be reversed.

It should also be remembered that plaintiff in her reply affirmatively alleged a prescriptive right to so course the water, based upon a continuous user for more than fifteen years next before the commencement of this action, which allegation was not controverted by defendant, and this taken with the evidence tending to support the allegation, was sufficient to fully warrant the chancellor in finding the natural flow of water to be as the plaintiff, Mrs. Fremd, avers. Plaintiff also denied that soap suds or bluing water had been allowed to flow on defendant's premises, and while the evidence upon this point is conflicting the chancellor resolved the doubt in favor of the plaintiff. The relief granted by the chancellor awarded an injunction against Mrs. Fremd, restraining her from emptying soap suds or other polluted water on to the servient estate. While this relief was not sought by the pleadings of Mrs. Moody, it is not complained of upon this appeal by Mrs. Fremd, and the order will not therefore be disturbed. An enforcement of the order of the lower court will, no doubt, bring about a complete adjustment of the differences between these two worthy dames.

There appearing no prejudicial error in the record, the judgment is affirmed both upon the original and cross-appeal.