## Stone et ux. v. Ashurst et al.

March 11, 1941.

B. J. Bethurum and W. Russell Jones for appellants.

Kennedy & Kennedy for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This is an appeal and cross appeal from a judgment mandatorily enjoining the defendants, Newt Ashurst and Cloda Ashurst, to replace a culvert in their driveway or to remove a fill constructed therein in order to permit the natural flow of surface water from the

land of plaintiff, Henry Stone, and also requiring the plaintiff to close or fill certain ditches he had made on his land which increased the flow of the surface water on to the defendant's land.

The respective parties own adjoining property on the south side of Highway No. 80, near Somerset, Stone's land being east of the Ashurst land. The latter's driveway from the road is at the division line. The natural drainage is from east to west through a broad and shallow sag or depression about 160 feet from the highway. There is some conflict in the evidence as to whether in times past before any change was made in the elevation of the surface at Ashurst's driveway water would collect temporarily on the land now owned by Stone. It appears that at one time there was a wood bridge or culvert under which the water passed, but this was taken out and the driveway was built up across the depression. About the year 1933, John Gover, who then owned the Stone property, asked and was reluctantly given permission by Ashurst to put in a culvert at his own expense under Ashurst's driveway in order that his land might be drained through the natural channel. There is contradiction between these two men as to whether it was agreed that the culvert should be removed whenever Ashurst wanted it done, but that point does not appear material to the question to be decided. Stone proved that it had been necessary upon several occasions for him to remove rock placed in the culvert by Ashurst. Gover had had the same experience. Not long before this suit was filed by Stone, his neighbor, Ashurst, removed the culvert and filled in the place from which it was taken, elevating the driveway 2 or 3 feet and forming a dam. Ashurst testified the culvert was useless as it was stopped up with dirt and that his driveway is only about eight inches above the natural surface. There is testimony to the effect that Ashurst deliberately took out the culvert under a claim of right and expressed the idea that every landowner must take care of his own surface water. His action throughout is tinged with spite. We think it established the culvert served its purpose when it was open. It is certain that after its removal water backed up on Stone's land and formed a half acre pool, one to two feet deep.

We find no difficulty in following the finding of the chancellor that the defendants unlawfully obstructed the

natural flow of the surface water and caused it to back up on plaintiffs' land. It is well settled law that a lower estate is subject to the servitude of receiving the natural flow of surface water from the upper estate, and the owner has no right to erect embankments or create other obstructions which will cause the natural flow of the water to stop and overflow the upper ground. Pickerill v. City of Louisville, 125 Ky. 213, 100 S. W. 873, 30 Ky. Law Rep. 1239; Madisonville, H. & E. Railroad Company v. Cates, 138 Ky. 257, 127 S. W. 988, 137 Am. St., 379; Moody v. Fremd, 177 Ky. 5, 197 S. W. 433; Dugan v. Long, 234 Ky. 511, 28 S. W. (2d) 765.

The defendants maintain that there had been no difficulty over the drainage until Stone dug a ditch leading from the highway to carry water coming from the other side of the road through a culvert down to the natural sag or depression and another ditch on the other side from his barn lot; that these ditches increased the flow of water and had not only damaged defendants' property but had formed the pool on Stone's land. Before the reconstruction of the highway in 1932 or 1933, water on the other side flowed across over an extended area. When it was rebuilt a 24-inch culvert collected the water and brought it through. This water had begun to wash the Stone land, and Gover, the then owner, dug a small channel eight or ten inches deep and about as wide which carried the water from the culvert into the natural depression on his land. Shortly before this suit was brought, Stone cleaned out that ditch, widening it some, and dug another like it from his barn to drain the water from the south side of the depression. We think it established that had not these ditches been opened the water would have spread out and been more readily absorbed and that the action of Stone and his predecessor, Gover, caused the acceleration and increase in the natural disposition of the surface water as well as that coming through the culvert of the highway.

The law is well settled in this particular also. It is that the owner of an upper estate has no right to make excavations or drains upon his ground by which the flow of surface water is diverted from its natural course and disposition and thereby cast upon the lower estate in an unnatural volume. Pickerill v. City of Louisville, supra; Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274. While one wit-

ness testified that the ditch from the highway had been first dug twenty years or so ago, his testimony is variable and we accept Gover's testimony that he had it done after the culvert was put in the reconstructed highway. The fact that his land was affected or its burden increased thereby did not excuse the passing on of that new flow of water or its acceleration to his lower neighbor, to his injury. Louisville & N. Railroad Company v. Stephens, 188 Ky. 1, 220 S. W. 746. Excepting this situation, the facts of this case are like those in Grinstead v. Sanders, 56 S. W. 665, 22 Ky. Law Rep. 51, and the principle of law applied there was properly applied here. Sanders had cut ditches through his land by means of which swamp water was artificially drained on to his neighbor, Grinstead, and he erected a dam and caused the water to accumulate on Sanders' land. We affirmed the judgment which required Grinstead to remove the dam and Sanders to close the ditches.

The judgment is affirmed on both the original and cross appeals.