## Louisville & N. R. Co. v. Daniels.

(Decided Dec. 10, 1937.)

322

ASHBY M WARREN, J. MILLER WHITE, THOMAS D. TINS-LEY and J. J. TYE for appellant.

HIRAM H. OWENS for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Knox circuit court in the sum of $1,050 against appellant and in favor of appellee, who was the plaintiff below. Appellee and her husband, George Daniels, instituted this action against appellant. In the first paragraph of their petition they allege that they owned a tract of land on Little Richland Creek adjoining appellant's right of way and railroad fill, and that prior to the purchase of the Cumberland & Manchester Railroad by appellant a drain was constructed beneath the fill, which appellant allowed to fill up, thereby causing a pond of stagnant water to accumulate on the right of way and to back up onto appellee's property to a point within a few feet of their residence, and thus rendered about one-half acre of valuable, tillable bottom land unfit for cultivation.

The second paragraph of the petition alleged that the stagnant water was within a short distance of the residence, and that during warm weather it became very offensive and foul odors arose therefrom. It was asserted that dead animals and other matter were permitted to decay in the pond and pollute the air, rendering the plaintiffs' home and surroundings unhealthy, uncomfortable, and offensive, and causing them great discomfort and annoyance. The petition prayed that plaintiffs be adjudged the sum of $125 for the destruction of the usable value of the land for five years prior to the institution of the action, "and the sum of $5,000 as damage to the usable value of her home and personal damage."

The petition indicated on its face that appellee had only a life estate in the property in question, and that her husband, George Daniels, had no interest whatever therein. Appellant filed a motion to require the plain-

tiffs to elect whether they would prosecute the cause of action alleged on behalf of Sallie Daniels or the cause of action undertaken to be stated on behalf of George Daniels. This motion was sustained, and the plaintiffs elected to prosecute the action in the name of George Daniels. On the day the case was set for trial, George Daniels tendered an amended petition, which is not in the record, but which is asserted in briefs to have alleged that his health had been permanently impaired by the pond, and he had become totally and permanently disabled. Appellant objected to the filing of this amended petition on the ground that it was a departure from the original cause of action. Appellee thereupon moved to be permitted to withdraw the election previously made and to prosecute the action on the original petition in the name of Sallie Daniels. This the court permitted to be done, and the petition was dismissed as to George Daniels.

Prior to this time appellant had filed an answer traversing the allegations of the petition and asserting various affirmative defenses. George Daniels had filed a reply to this answer denying its affirmative allegations. When George Daniels withdrew from the case and Sallie Daniels came back in, no attempt was made to file a pleading on her behalf. The case, however, seems to have proceeded with the pleadings in this state without objection from either side.

The case was tried by a jury, which returned a verdict for the appellee in the sum of $1,550. Fifty dollars was allowed for the reasonable rental value of the land, and the remainder was fixed by the jury as the damages sustained by appellee in the use and enjoyment of her home.

After the verdict appellee voluntarily filed a remittitur in the sum of $500. Over appellant's objection and exception, the court overruled the motion for a new trial, one of the grounds of which was that the verdict was excessive, and rendered judgment in favor of appellee for $1,050.

George Hammonds, a former owner of the Daniels land, testified that a pond was at one time located at the point now claimed by appellee to be a swamp resulting from unnatural causes. Mr. Hammonds testified that he constructed a ditch from the pond to Richland Creek and succeeded in draining the area to such

an extent that it could be successfully farmed. The testimony indicates that when the railroad fill was constructed some twenty years ago this ditch was filled up, and there has therefore been no artificial drainage by this means since that time. It seems beyond question that any claim for damages resulting from the original filling up of Mr. Hammonds' ditch has long since been barred by limitations. It is asserted, however, that at the time of the original construction of the permanent fill a wooden culvert eight or ten feet long was inserted beneath the fill, and it is the alleged obstruction of drainage through this culvert within three or four years next before the institution of this action that forms the basis for appellee's present claim to damages.

Appellee introduced one witness who testified that he himself, with the aid of two other men, placed the culvert beneath the fill. Appellant, on the other hand, introduced several witnesses who state that they have made a vigorous search for the culvert and have been unable to locate it. We are unable to determine from the testimony of appellee's witnesses whether they contend that the culvert was located beneath the fill at an angle to the tracks or parallel thereto. However, in the view which we have taken of the case, this item is not of material importance. In addition to the testimony of Mr. Hammonds in regard to the existence of the pond at the time when he constructed the original ditch, there is testimony by several other witnesses for the plaintiff to the effect that the point where the swamp exists is lower than the surrounding property between it and Richland Creek. Appellant has introduced testimony to like effect and has filed a map which, while not giving the contour lines, does show the elevation of such a number of points between the swamp and the creek as to indicate the verity of the assertions by these witnesses. It is asserted by witnesses for the appellant that the swamp exists on both sides of the railroad right of way, but appellee's witnesses contend that the land is higher across the track from the Daniels property.

Assuming that the culvert exists as claimed by appellee, we are unable to see from the testimony how it could possibly have drained water from the swamp. On the contrary, under the testimony as here presented, the only possible effect of the culvert would be to drain the surrounding territory into the pond or swamp.

No doubt, upon another trial appellee may be able to establish some causal connection between the stopping up of the alleged culvert and the creation of the swamp, but, as the record now stands, it would be the purest speculation to attempt to establish any causal relation between the stopping up of the culvert and the creation of the swamp. It may be argued that the best evidence of cause is effect and that testimony showing the present existence of the swamp and the stopping up of the culvert should be sufficient to authorize a jury to determine the relationship. This might be true if we could say that the stopping up of the culvert was calculated to create the condition. As pointed out above, however, the testimony as it now stands indicates that the stopping up of the culvert would tend to lessen the amount of water in the swamp rather than to increase it.

The testimony of several witnesses rather indicates that the construction of the fill over the ditch dug by George Hammonds did not actually stop up that ditch, but it remained open as an underground drain, and that the alleged culvert was in some way connected with this underground Hammonds ditch. Clearly, appellee's right to the *natural* drainage of her property is a very different thing from a claim for *artificial* drainage over the lands of another. Grinstead v. Sanders, 56 S. W. 665, 22 Ky. Law Rep. 51; Pickerill v. Louisville, 125 Ky. 213, 100 S. W. 873, 30 Ky. Law Rep. 1239. There is nothing in the pleadings or in the evidence which would indicate the existence of any prescriptive right to artificial drainage by appellee. Accepting every reasonable deduction to be drawn from this evidence, appellee still falls short of making a case for a jury.

Appellant likewise complains of various other alleged errors of the trial court, both in refusing a peremptory instruction and in the giving and refusing of instructions. It also complains of the amount of the verdict and of the impropriety of the remittitur by appellee. We need not go into these questions at this time in view of our conclusion that the proof introduced was not sufficient to take the case to the jury. On another trial the issues and the verdict may be different, and a decision of the questions thus argued is therefore reserved.

Judgment reversed.