Elizabeth **WITHERS** et al., Appellants,

v.

**BEREA COLLEGE, Appellee.**

Court of Appeals of Kentucky.

May 19, 1961.

Rehearing Denied Oct. 13, 1961.

Thomas D. Shumate, Richmond, for appellants.

Shackelford & Burnam, Richmond, for appellee.

PALMORE, Judge.

The appellee, Berea College, owns a large tract of mountain woodland at the head of Cowbell Hollow in Madison County. From 1904 until 1955 it collected and impounded water from five underground springs and a small dam and reservoir for surface water in this area. In 1955, at a cost of about $250,000, it constructed a large dam across the hollow, creating a 20-acre reservoir covering the six water sources theretofore used. It uses the water to supply its own

needs and 1,100 paying customers in and around the City of Berea. The watershed impounded comprises the uppermost 690 acres of the hollow.

The appellant Elizabeth Withers owns and resides on 20 acres of land about 1½ miles down the hollow from the dam. Through this tract runs a small watercourse known as Cowbell Creek, and, asserting the rights of a lower riparian owner, Mrs. Withers claims that by the construction of the dam and diversion of the impounded waters to destinations and purposes not connected with the tract on which the dam is located the college has wrongfully caused Cowbell Creek, as it passes through her property, to go dry during the summer months. She sues for an injunction and damages.

After trial without a jury the court entered judgment for the college upon a factual finding, in substance, that prior to and at the time of construction of the dam Cowbell Creek did not exist as a watercourse above the dam site. The appeal challenges this finding as clearly erroneous. CR 52.01.

Both at common law and under KRS 262.680 it is clear that the owner of land may collect and use as he pleases surface water that has not entered into a natural stream or definite body such as a lake or pond. See 56 Am.Jur. 548 (Waters § 66); 93 C.J.S. Waters § 113, p. 802.

"The owner of the upper estate may withhold such water, and prevent it from reaching the lower land. Such water belongs absolutely to the owner of the land on the surface of which it is found. No doubt, all the water falling from heaven, and shed upon the surface of a hill, at the foot of which runs a brook, must, by the natural force of gravity, find its way to the bottom and so into the brook; but this does not prevent the owner of the land on which it falls from dealing as he may please and appropriating it. He cannot, it is true, if the water has arrived at, and is flowing in, some natural channel already formed. But he has a perfect right to appropriate it before it arrives at such channel." Jones on Easements, as quoted in dissenting opinion of Judge Burnam in Stith v. Louisville & N. R. Co., 1900, 109 Ky. 168, 58 S.W. 600, 603, 22 Ky.Law Rep. 653.

Though the legal principle is clear, the factual problem of determining at just what point water ceases to be mere surface drainage and becomes a natural watercourse is most difficult. "It has been stated that surface water becomes a natural watercourse at the point where it begins to form a reasonably well-defined channel, with a bed and banks, or sides and current, although the stream itself may be very small and the water may not flow continuously. So, while the term 'watercourse' does not ordinarily include water descending from hills, down hollows and ravines, only in times of rain and melting snow, yet where water, owing to the hilly and mountainous configuration of the country, accumulates in large quantities from such causes, and at regular seasons descends through long, deep gullies or ravines on the land below, and in its onward flow carves out a distinct and well-defined channel, which bears the unmistakable impress of the frequent action of running water, and through which it has flowed from time immemorial, such stream constitutes a watercourse, and is governed by the rules applicable thereto." 56 Am.Jur. 498 (Waters, § 8).

In the case before us the plaintiffs had the burden of proving that Cowbell Creek at and above the dam site had a bed, banks and a current of water flowing at those times when the streams of the region habitually flow, these characteristics being essential to the substantial existence of a natural watercourse. Cf. 93 C.J.S. Waters § 4, pp. 596, 604–605. There is no doubt that it was and is in this category when it reaches the property of Mrs. Withers 1½ miles below the dam, but the testimony focused directly on that portion of the hol-

low or ravine situated at and above the dam site was scarcely enough to prove a case either way.

It was testified by witnesses for the plaintiffs that the "channel" of the creek originates a mile or so above the dam and that the dam was constructed across the main channel. Some of the witnesses for the college testified that "in rainy weather there would be water in that valley," but nothing other than a few "pot-holes" during the dry season. Naturally, however, there will be water anywhere when it rains, and none of this evidence satisfactorily answers the vital question of how frequently or regularly water actually flowed through the channel or ravine above the site of the dam.

■ There are some 700 to 750 acres of watershed, fed by intermittent streams, between the dam and the point where the creek enters the Withers property. Witnesses testified that the flow of water at that place and below since the construction of the dam has not been noticeably different from what it was before. The trial court found as facts that the creek on the appellants' farm was frequently dry both before and after the advent of the dam and that the value of the property has not been diminished by its construction. These findings are supported by specific testimony to that effect, and even if we should question his conclusion that no definite watercourse existed above the dam site we certainly could not disturb his finding that appellants were not damaged.

■ As to the existence or non-existence of a "watercourse", appellants contend the trial court's finding that the waters occurring above the dam site were "diffused surface water" was not supported by substantial evidence and therefore was clearly erroneous. Assuming this position to be technically correct, yet the practical effect of the finding was that the waters at that location had *not* become a watercourse, which is the same proposition stated conversely. Appellants had the burden of proof on the point. Though it is some-

times said that a finding of fact is "clearly erroneous" when it is not supported by "substantial evidence," this particular test can hardly apply in reviewing a finding adverse to the party with the burden of proof. In such a case the trier of fact simply may not be convinced by the evidence adduced in support of the burden, in which event his finding does not necessarily rest on the sufficiency, or even the existence, of proof on the other side. To say, then, that his negative finding was clearly erroneous would be the equivalent of saying that the burden of proof had been satisfied by evidence so conclusive as to entitle the party to a favorable finding as a matter of law (or a directed verdict if the trier of fact were a jury).

The sum total evidence in this case tending to prove the existence of a natural watercourse above the dam site at or prior to construction of the dam was not of sufficient probative force to establish it as a matter of law. Therefore, we are unable to say that the negative finding of the trial court was clearly erroneous.

Judgment affirmed.