**KRAUSS WILLS COMPANY, Inc.,**
Appellant,

v.

**PUBLISHERS PRINTING COMPANY, Inc.,**
et al., Appellees.

Court of Appeals of Kentucky.

March 19, 1965.

Rehearing Denied June 4, 1965.

Thomas B. Givhan, Shepherdsville, Ky., for appellant.

D. Paul Alagia, Jr., Brown & Alagia, C. E. Schindler, Louisville, for appellees.

HILL, Judge.

This is an appeal from a judgment awarding appellant $1,770.80 and disallowing its claim for damages for alleged interference by appellee, Publishers Printing Company, with appellant's employees causing them to terminate their employment with appellant. Appellant claimed it should have recovered a sum "closer" to $4,901.64.

For convenience, appellant will be referred to herein as "Krauss;" appellees, Publishers Printing Company, will be referred to as "Publishers;" and H. J. Whitaker, Walter Diersing, George Strickland and Joe Bernzweig, will be designated "The Operators."

On May 29, 1958, Krauss and Publishers entered into a contract under the terms of which Krauss agreed to furnish typesetting equipment to be delivered to and used by Publishers in its trades magazine printing establishment at Shepherdsville, Kentucky. Krauss furnished the necessary men to operate this equipment. These men are "The Operators" in this case.

On December 22, 1958, Publishers filed CA 651 against Krauss, alleging failure of Krauss to perform its contract to provide typesetting. This suit was dismissed with prejudice on December 27, 1958.

On December 10, 1959, Publishers filed the second suit, CA 781, again alleging failure to perform its contract, and failure to provide equipment detailed in the contract. A restraining order was asked and later obtained.

On December 11, 1959, Krauss filed action CA 784 against "The Operators," seeking to restrain them from operating the equipment. Other pleadings and amendments were filed, but on March 14, 1960, the two last named actions were consolidated, a conference was held, and the trial court entered an order defining the issues. They are thus defined:

"1. Claim of wages due from Krauss by Whitaker, Strickland, Bernzweig and Diersing.

"2. Claim of Publishers for damages and breach of contract from Krauss.

"3. Claim of Krauss for account due from Publishers.

"4. Claim of Krauss against appellees for lost profits, breach of contract, and punitive damages.

"5. Claim of Krauss against Simon and Publishers Printing Company for interference with its contract of employment with Whitaker, Strickland, Bernzweig and Diersing, punitive damages."

With the exception of a short hearing held by the trial judge December 19, 1959, the case was tried by deposition. In all, the parties have taken and now have before us 26 volumes of depositions. Appellant has filed its 36-page brief, the appellees filed one containing 98 pages.

The arguments relied on by appellant for reversal are as follows:

"1. The account.

"2. Krauss breach of contract induced by Publishers Printing Company or Simon.

"3. The conspiracy.

"4. Wrongful interference with contract of employment.

"5. Right of Krauss to jury trial.

"6. The injunction.

"7. Whitaker wages due from Krauss."

It should be noted that Frank Simon, referred to above, is the principal owner and manager of Publishers.

We first discuss Argument 1.

The account involves many credits and numerous billings, some for work done before billing, others for billings for "over-matter and typesetting ahead of billing." At issue, also, is the period the amount should cover. Appellant contends the period commenced December 23, 1958. The order dismissing was dated December 27, 1958. Appellant does not deny that on more than one occasion it did not give credit for payments by Publishers. The evidence concerning the account was conflicting. The finding of fact on this issue is not "clearly" or at all erroneous. It is affirmed in this respect. Cr 52.01.

Arguments 2, 3 and 4 may well be discussed together. Krauss admits it breached its contract in Argument 2, but maintains it was induced to and excused by the first breach of the contract by Publishers. So, we go directly to the major question presented in Argument 3, "the conspiracy," and Argument 4, alleged wrongful interference with contract of employment.

To review, the two suits here involved were filed December 10 and 11, 1959. The employees of Krauss left Krauss December 9. Some suspicion may be aroused by the close relations and working conditions of The Operators with Publishers from the very beginning of the contract involved. This was made necessary by the very nature of the contract itself. The equipment was leased to Publishers to be used in its Shepherdsville plant and operated by Krauss' selected personnel, The Operators.

At the outset it should be kept in mind that a conspiracy is difficult of proof. Notwithstanding that difficulty, the burden is upon the party charging it—Krauss in this case. Withers, v. Berea College, Ky., 349 S.W.2d 357 (1961). Let us look at the situation and circumstances of the parties at the time and previous to the alleged conspiracy and alleged interference with The Operators by Publishers.

The record contains the testimony of Frank Simon, manager of Publishers.

Here are some of the high lights of his voluminous testimony: He says Krauss misrepresented, at the very beginning, his experience in typesetting work; that Krauss misrepresented the number and standing of its customers; that its finances were seriously misrepresented; that a very short time after commencing work for Publishers, Krauss constantly nagged Publishers for advances and weekly payments; that there was no accounting "whatsoever," and that Krauss "had over a thousand dollars a week in advance." We quote further from Simon:

"Now this attitude is the most serious thing of all. Of course, when a company has the attitude that they will gouge the customer for all they can and charge everything that the traffic will bear with no regard for the customers' needs, that is a critical thing that drives customers away and forces you into a one shot arrangement in getting new customers every day. Nobody would do business that way. That was his attitude. I had no inkling of this attitude before toward our customers and in December of 1958 the (Air Pollution Control Association of Pittsburg)—a $25,000.00 a year contract—cancelled the contract with me because Krauss-Wills Co., Inc., refused to complete copy in forty days for receipt. In thirty days it should have been finished, even in ten days. Mr. Harry cancelled the contract with me by registered letter. That was a $25,000.00 account we lost. Now, following that, in February of 1959 the Who's Who Directory, which we had a three-year contract with to print for $60,000.00 a year—the customer quit us and cancelled the year at the end of the first issue because of the nightmare, they said—the nightmare of our experience with the Krauss-Wills Co., Inc., from the Chicago operation."

The substance of this testimony is denied by Krauss.

Evidence of difficulties between Krauss and Publishers is clearly demonstrated by a telegram dated September 30, 1959, from the former to the latter. We quote from it:

"Yours overtures of purchase to John Whitaker disrupting operations and morale. Proof reading capabilities determined at Johns Level run your operation allow us to run ours. Dixons services so desirable suggest you contact Dixon. Let us agree to disagree as gentlemen and arrange a divorce."

The relationship between Krauss and The Operators, at the time The Operators quit Krauss and went to work for Publishers, is highly important as furnishing a motive for quitting Krauss. True, that relationship may likewise have provided a fertile soil into which Publishers could plant the seed of discord and thereby "interfere" with the employer and employee relationship between Krauss and The Operators. We think from the evidence that Krauss planted the seed of discord.

By letter from Krauss dated May 18, 1959, to Whitaker, one of the Operators, the salary of the latter was reduced. In this letter Krauss admitted having financial trouble. Whitaker also testified that: "We collected several thousand of dollars in October 1959, in catching up with the over-matter and the typeset ahead of billing and my salary stayed at this low side of $100.00 a week even though Mr. Krauss realized that I was going heavily in debt due to sickness of my wife."

Then again, on November 21, 1959, Krauss wrote another letter to Whitaker that demonstrates all was not well between Krauss and the Operators. We quote from this letter:

"Dear John: Your tremendous imagination, built up by your self-delusion, as indicated by your letter, is as fantastic as your lack of application to the duties you were to perform. The beliefs as to what you are entitled to are strictly the results of the hyptonism and auto-suggestion for which you are so famous, so that you may keep your ego bolstered, and put on a grandiose and boastful appearance for your neighbors and friends and also for your associates. Your letter is strictly filled with 'bull roar.'"

Again on December 4, 1959, Krauss did not pay the weekly salary to Whitaker. On December 8, 1959, Mr. Krauss and Mr. Laff, owners of Krauss, entered the Shepherdsville plant, at which time Mr. Laff stated in a loud voice that he told Mr. Krauss "eight" months ago that the whole crew should be "fired."

It may be noted in concluding this phase of the case that the Operators quit in the same month a year before, incapacitating the machinery on orders of Mr. Krauss. Again, on November 21, 1959, Mr. Krauss signed a letter to Whitaker in which he said:

"You have been incompetent, lazy, disloyal, and a complete undermining factor in the operation."

On an appeal from a finding of fact, Cr 52.01 provides:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

■ We deem it unnecessary to cite opinions in support of this proposition. This was a well-recognized rule before its codification. We find no error in the trial court's finding there was no conspiracy. Massachusetts Bonding & Insurance Company v. Huffman, Ky., 340 S.W.2d 447 (1960).

■ Appellant insists in Argument 5 that it was entitled to a jury trial on the "remaining" issues after a trial of the condition of the account. We think this

contention is without merit under Cr 39.01, the pertinent part of which provides:

"The trial of all issues so demanded shall be by jury, unless * * * (3) the court upon motion or of its own initiative finds that because of the peculiar questions involved, or because the action involves complicated accounts, or a great detail of facts, it is impracticable for a jury intelligently to try the case."

Appellant complains of the granting of the temporary restraining order. In view of the peculiar nature of the contract, and the possible loss to all parties if the plant had been closed, it was proper for the court to maintain the status quo for a brief time.

Finally, Krauss "takes the strongest exception" to the finding of the chancellor awarding Whitaker judgment for $50.00 wages. We find the judgment not to be "clearly" or at all erroneous under Cr 52.01, in this respect.

The judgment is affirmed.